**SOUTHERN RAILWAY COMPANY et al., Plaintiffs-Appellants,**

v.

**Doyle COMBS et al., Defendants-Appellees.**

**Nos. 73-1525, 73-1526.**

United States Court of Appeals, Sixth Circuit.

Aug. 14, 1973.

John A. Lloyd, Jr., Cincinnati, Ohio, for plaintiffs-appellants, Southern Railway Co. and others; Daniel P. Dooley, Cincinnati, Ohio, on brief; Frost & Jacobs, Cincinnati, Ohio, of counsel.

Covington & Burling, Charles A. Horsky, Washington, D. C., for plaintiff-appellant Brotherhood of Railway Airline & Steamship Clerks; Walter F. Smith and Thomas J. Kircher, Cincinnati, Ohio, on brief; William J. Donlon, Gen. Counsel, Brotherhood of Railway, Airline and Steamship Clerks, Rosemont, Smith, Latimer & Swing, Cincinnati, Ohio, of counsel.

Jonas B. Katz, Cincinnati, Ohio, for defendants-appellees.

Harlington Wood, Jr., Asst. Atty. Gen., William W. Milligan, U. S. Atty., Walter H. Fleischer, Judith S. Feigin, Attys., Dept. of Justice, Washington, D. C., on brief for the United States as amicus curiae.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and MOYNA-HAN, District Judge.*

PHILLIPS, Chief Judge.

This is an appeal from the District Court's denial of a motion for a preliminary injunction in a labor dispute. Plaintiff-appellant companies, the Southern Railway Company (Southern), the Cincinnati-New Orleans & Texas-Pacific Railway Company (C.N.O. & T.P.), Central of Georgia Railroad Company and Central of Georgia Motor Transport Company (Motor Transport) are highly interrelated components of an integrated rail system commonly referred to as the Southern Railway System. In Cincinnati, Ohio, these companies conduct extensive operations at a train yard and terminal facility known as the Gest Street Yards.

Plaintiff-appellant union is the Brotherhood of Railway, Airline & Steamship Clerks, Freight Handlers, Express and Station Employees, AFL–CIO (Brotherhood). The Brotherhood has been certified as the collective bargaining agent for the employees of all the appellant companies. Pursuant to this certification the Brotherhood entered into collective bargaining agreements with the individual corporations which agreements were in effect at the time of the present dispute.

The defendant-appellees include six former employees of K. & O. Transportation Services and their collective bargaining agent, Local 100, Truck Drivers, Chauffeurs and Helpers Union (Local 100).[1] Local 100 does not have any contract with any of the appellant companies. Nor have the six individual defendants-appellees ever been employed by any of the appellant companies.

The Southern Railway System's Gest Street activities include the intra-yard transfer of freight and cargo incident to the carriers' "piggy-back" operations. This involves the movement of goods, originally delivered to the Yard by independent motor carriers, to flat cars for rail movement and conversely the transfer of incoming cargo from flat cars to the trucks of awaiting consignees. Prior to March 15, 1973, this intra-yard transfer was performed by K. & O. Transportation Services. K. & O. was and is engaged in the general business of freight and cargo transfer in and about greater Cincinnati. K. & O. employed eight individuals in connection with its Gest Street operations. These employees were represented by Local 100. Six of these individuals are appellees herein.

The carriers decided not to renew their contract with K. & O. upon its expiration on March 15, 1973. Instead they entered into a new agreement with their own affiliate, Motor Transport. Substantially all of Motor Transport's activities on a national level involve similar intra-yard operations at various Southern Railway System facilities.

When the termination of the K. & O. contract was announced, all eight K. & O. employees applied for jobs with Motor Transport. Because of the Motor Transport agreement with the Brotherhood only two K. & O. employees were offered employment. Thereupon the remaining six applicants commenced peaceful picketing at both entrances to the Gest Street Yards.[2]

On the same day that picketing began, C.N.O. & T.P. brought suit in the Common Pleas Court of Hamilton County, Ohio, to enjoin the picketing. An ex parte temporary restraining order was

---

* Honorable Bernard T. Moynahan, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation.

1. Local 100 is affiliated with the International Brotherhood of Teamsters.

2. Signs carried during the initial stages of the picketing read:
"Central of Georgia
Div. of Southern R.R.
Refuses to Hire
Members of Teamsters
Local 100."

granted. Before a hearing on the motion for a temporary injunction could be held, the defendants removed the case to the District Court. At that time the complaint was amended to include as plaintiffs all companies operating out of the Gest Street Yards. In addition the Brotherhood was permitted to intervene as a party plaintiff and Local 100 voluntarily became a party defendant.

The District Court conducted a hearing, made findings of fact, and on April 11, 1973, concluded that the motion for a preliminary injunction must be denied. On that same date appellants filed a notice of appeal to this court. On April 12, 1973, this court granted appellants' motion for an injunction pending appeal. A subsequent application to stay the injunction was denied on May 15, 1973, by Circuit Justice Potter Stewart.

With respect to the picketing, the District Court made the following findings of fact:

"The defendants clearly will resume picketing if the state court order be dissolved and the injunction motions be denied.

"The brief picketing did

(a) interfere with the performance of work by plaintiff's own employees, and

(b) deter shippers from entering and/or delivering freight to the yard.

"It will, if permitted to continue, result in shutting down the yards and in irreparable loss to the plaintiffs. The end objective of the picketing is to force Transport to comply with Local 100's request that Transport employ six of its members and specifical- ly the six individual truck driver defendants who formerly did truck driving work in connection with the operation of Gest Street. The means to accomplish this objective as suggested by the picketing is to deter shippers from shipping across and drivers from driving across the picket line.

"Necessarily, the discharging of Brotherhood employees of Transport is an objective of the picketing. The same is true with respect to the application of the contract between Transport and Brotherhood to the Gest Street operation and/or the prevention of seniority job bidding under the seniority provisions of their contract. The defendants (individual and Local 100) have and do assert the claimed right of the Teamster members to employment and in that sense assert a right of recognition."

■ The District Court properly recognized the general rule that federal courts do not have jurisdiction to enjoin picketing arising out of a labor dispute [3] but that this rule is inapplicable where the parties may invoke the conciliatory procedures of the Railway Labor Act. Brotherhood of Locomotive Engineers v. L. & N. R. Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Southern Ry. Co. v. Brotherhood of Locomotive Firemen and Enginemen, 119 U.S.App. D.C. 91, 337 F.2d 127 (1964). The District Court held that the special exception for Railway Labor Act cases was inapplicable here as it found that Motor Transport was not a "carrier" [4] and that the pickets were not "employees" [5] under the Act.

3. The Norris-LaGuardia Act, 29 U.S.C. § 101 et seq.

4. 45 U.S.C. § 151, First, defines "carrier" as:
   "First. The term 'carrier' includes any express company, sleeping-car company, carrier by railroad, subject to the Interstate Commerce Act, and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equip- ment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported by railroad, . . . . "

5. 45 U.S.C. § 151, Fifth, defines "employee" as:
   "Fifth. The term 'employee' as used herein includes every person in the service of a carrier (subject to its con-

The National Mediation Board first asserted jurisdiction over Motor Transport in 1958. At that time the International Brotherhood of Teamsters petitioned the National Labor Relations Board for a certification that the union was the bargaining agent for Motor Transport employees in Georgia. The N.L.R.B., as is its custom in cases where it appears that the N.M.B. may have jurisdiction, requested the N.M.B's advice regarding possible coverage by the Railway Labor Act, 45 U.S.C. § 151 et seq. The N.M.B. conducted an extensive study and concluded that Motor Transport was a "carrier" under 45 U.S.C. § 151, First, and therefore subject to the Act. Thereafter the Teamsters voluntarily withdrew their petition.

In 1967 and in 1969 the N.M.B. again asserted jurisdiction over Motor Transport. Pursuant to the 1969 assertion, the Brotherhood was certified as the collective bargaining agent for the "carrier's" employees. Under the authority of this certification, the Brotherhood entered into a "systemwide" collective bargaining agreement with Motor Transport.

We conclude that this is an appropriate situation to employ the doctrine of primary jurisdiction to obtain the views of the agency charged by Congress with the administration of the Act, the National Mediation Board.

■■ The doctrine of primary jurisdiction does not determine whether a court or an administrative body ultimately shall be responsible for resolving an issue. Rather it is used to determine which tribunal shall make the initial determination. The doctrine permits courts to suspend the resolution of issues, which are originally cognizable in the courts, until such time as an administrative body, with special competence in the field, has an opportunity to present its views. United States v. Western Pac. RR. Co., 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956); Crain v. Blue Grass Stockyards Co., 399 F.2d 868 (6th Cir. 1968); 3 K. Davis, Administrative Law § 19.01 (1958). This concept was recently summarized in Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), wherein the Court stated:

> "When there is a basis for judicial action, independent of agency proceedings, courts may route the threshold decision as to certain issues to the agency charged with primary responsibility for governmental supervision or control of the particular industry or activity involved." 400 U.S. at 68, 91 S.Ct. at 208.

■ Here we are calling upon the agency to interpret the statute upon which its jurisdiction rests. This differs from the traditional primary jurisdiction case wherein complex issues of fact or the interpretation of administrative rules are involved. Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952). However, where the interpretation of specific statutory provisions involve consideration of broad national policies, courts have not hesitated to defer questions of jurisdiction to insure the most thoughtful resolution. Locust Cartage Co., Inc. v. Transamerican Freight Lines, Inc., 430 F.2d 334 (1st Cir.), cert. denied, 400 U.S. 964, 91 S.Ct. 365, 27 L.Ed.2d 383 (1970); J. M. Huber Corp. v. Denman, 367 F.2d 104 (5th Cir. 1966). In J. M. Huber Corp. v. Denman, Judge Brown wrote:

> "At the outset we recognize that this is a new application of the doctrine of primary jurisdiction. But considering the broad aim of this device and the consequent flexibility of it there is really nothing startling about submit-

tinuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission. . . . ."

**150**

ting to an agency for initial decision the question of its own jurisdiction.

"That that question of law happens to be one of jurisdiction does not force a different result. To the contrary, justification for judicial deferral of the jurisdictional question for initial resolution by an agency is even stronger than for a non-jurisdictional question. This is demonstrated by the many cases upholding the jurisdiction of administrative agencies to determine the coverage of their respective statutes and barring all attempts through judicial proceedings to avoid such determination." (Footnotes omitted.) 367 F.2d at 111–112.

■ We believe deference to the N. M.B. is appropriate in this case because far reaching considerations of national policy underlie the legal issues. The District Court decided that the "trucking service" exception to the Act's definition of "carrier" precludes Motor Transport's qualification. Research into the meaning of this exception indicates an inadequacy of recorded indicia of Congressional intent. By availing ourselves of the Board's experience, we believe the groundwork will be laid for, " . . . a more informed and precise determination by the Court of the scope and meaning of the statute. . . ." Federal Maritime Board v. Isbrandtsen Co., Inc., 356 U.S. 481, 498–499, 78 S.Ct. 851, 862, 2 L.Ed.2d 926 (1958).

Another area in which the views of the National Mediation Board will be necessary .is the applicability of the Act to a situation where those individuals picketing the Yard have never been directly employed by any company presently operating at the Gest Street Yards. Here too we believe an expression of the Board's position will facilitate the ultimate resolution of the controversy.

The injunction heretofore issued on April 12, 1973, by this court will remain in effect until the issuance of the mandate in this case and thereupon will be dissolved. Should any party desire further injunctive relief pendente lite, application should be made before the District Court. *See*, Brawner Building, Inc. v. Shehyn, 143 U.S.App.D.C. 125, 442 F. 2d 847 (1971).

The decision of the District Court is vacated. The case is remanded for further proceedings not inconsistent with this opinion. No costs are taxed. Each party will bear his or its own costs.