James P. MITCHELL, Secretary of Labor, United States Department of Labor

v.

GEORGIA BROILER SUPPLY, INCORPORATED.

Civ. A. No. 520.

United States District Court
N. D. Georgia,
Newnan Division.
May 10, 1960.

---

1. The Restatement, Torts, Negligence, Chap. 13 is the same.

342

Harold C. Nystrom, Washington, D. C., Beverley R. Worrell, Birmingham, Ala., George T. Avery, Roger J. Martinson, Atlanta, Ga., for plaintiff.

Walter W. Calhoun, Atlanta, Ga., for defendant.

SLOAN, District Judge.

The above stated action is one brought by the Secretary of Labor, United States Department of Labor, under the provisions of § 17 of the Fair Labor Standards Act of 1938, as amended, wherein he seeks to enjoin the defendant from violating the provisions of §§ 15(a) (1), 15 (a) (2) and 15(a) (5) of the Act. The defendant denies that these sections of the Act are applicable to it and contends that its employees, with respect to whose employment plaintiff has asserted violations of the Act, are exempt from the monetary requirements of the Act under the provisions of § 13(a) (6) thereof.

The parties, through their respective counsel, on the 26th day of March, 1960, stipulated and agreed:

1. That plaintiff brings the action under the provisions of §§ 15(a) (1), 15(a) (2) and 15(a) (5) of the Act.

2. That jurisdiction is conferred by § 17 of the Act.

3. That defendant is now, and at all times "hereinafter mentioned" was a corporation organized under the laws of the State of Georgia, having its principal office and place of business at 505 Maple Street, Carrollton, Carroll County, Georgia.

4. That defendant purchases baby chicks and puts them out in chicken houses of various individuals with whom it has an agreement, a copy of such an agreement being attached to the stipulation and made a part thereof and that in the agreement the individual with whom the chicks are placed is called the "lessor" and the defendant is called the "lessee."

5. Defendant enters into such agreements with individuals in Georgia and Alabama.

6. That when the chicks which are placed in such leased chicken houses under such agreements are ready for market that defendant's employees go to such houses and catch, coop and load the chickens on trucks of various poultry processing plants located in Georgia and Alabama.

7. That the processing plants which purchase such chickens from defendant process and then sell and ship substantial numbers of such chickens in interstate commerce and that title to such chickens passes from defendant to the purchasing processors upon being loaded upon the trucks as above described.

8. That defendant regularly sold to processing plants approximately 1,500,000 pounds of chickens each month which were raised, grown and handled as above set forth.

9. That at defendant's establishment at Carrollton, Georgia, it rents the land and building and owns the equipment located therein by which it grinds and mixes poultry feed to be fed exclusively to its own chickens located in the houses and on the property of individuals with whom it has contracts as set out in stipulation 4.

10. That grain and feed concentrates are regularly received at defendant's feed mill from points in Alabama and Tennessee and are there unloaded by defendant's employees.

11. That defendant's feed mill produces about 400 tons of feed per week which is hauled by its employees in defendant's trucks to the houses where the chickens are placed under such contracts and that such feed is used solely for feeding such chickens and that approximately 10% of such feed is hauled to leased chicken houses in Alabama for feeding to such chickens.

12. That none of the feed ground and mixed at defendant's mill is disposed of in any manner other than as set forth in stipulation No. 11.

13. That while the chickens are being grown in the houses as set forth above, under such contracts, the defendant sends its employees, including those named in the stipulation, regularly and recurrently to such houses for the purposes of examining the poultry, treating same when necessary, aiding and doctoring same in many various ways such as spraying with antibiotic dust, placing soluble antibiotics in their drinking water, and placing feed in the houses which contains remedial drugs or medicines for defendant's chickens; that in addition such employees, regularly and recurrently establish, maintain, regulate and control the ventilation and heating of the houses containing its chickens in order to insure the proper health and growth of such chickens and that all drugs, medicines or feed referred to are purchased and paid for by defendant and at all times are its property.

14. That defendant averages contracting for approximately 225 chicken houses in the manner set forth and will average raising 24,000 chickens per year in each of such houses; that the average amount of money paid by defendant to the lessors as rental for such chicken houses and adjoining properties and as compensation for some of the services rendered by the lessors will average approximately 1.9¢ per pound of poultry which the defendant raises in such leased chicken houses.

15. That defendant employed Melvin Bearden during the period from February 14, 1958 through June 19, 1958, at a salary of $40 per week; from June 20, 1958 through January 2, 1959, at a salary of $45 per week; from January 3, 1959 through June 26, 1959, at a salary of $50 per week; from June 27, 1959 through December 31, 1959, at a salary of $55 per week, and from January 1, 1960 "to present date" at a salary of $65 per week; that defendant kept no record of the hours worked each day and each week by this employee and that during this period of employment that such employee went around to the various chicken houses located in Georgia and Alabama where defendant's chickens were being raised under the described arrangements to check the condition of such chickens, regularly drove defendant's truck, hauling feed ground and mixed in the defendant's feed mill to the various chicken houses for feeding to the chickens exclusively and also regularly did some work in defendant's feed mill sacking feed and sewing sacks; that this employee is exempt from the overtime provisions of the Act under the provisions of § 13(b) (1) thereof.

16. That defendant employed Morris Edson during the period from January 10, 1957 to February 8, 1958, at a salary of $45 per week and from February 8, 1958 to February 7, 1959, at a salary of $50 per week and that during this period defendant kept no records of the hours worked by such employee and that all times this employee worked primarily in driving a truck, hauling defendant's feed which had been ground and mixed in its mill from such mill to the chicken houses

located in Alabama and Georgia for feeding to the defendant's chickens exclusively; that this employee is exempt from the overtime provisions of the Act under the provisions of § 13(b) (1) thereof.

17. That defendant employed Harvey Farmer during the period from March 22, 1956 through June 7, 1957, at a weekly salary of $42.50; from June 8, 1957 through November 15, 1957, at a weekly salary of $47.50; from November 16, 1957 to February 26, 1959, at a weekly salary of $50 as a mill hand at its feed mill at Carrollton, Georgia, and that this employee helps to unload feed and on occasion helps to haul it to chicken houses located in Georgia and Alabama containing defendant's chickens and that defendant kept no records of the hours worked by this employee.

18. That defendant employed William E. Hay during the period of May 16, 1958 to April 30, 1959, at a weekly salary of $50 and that during the last two months of this period such employee worked as a truck driver, hauling feed from defendant's feed mill to the chicken houses located in Georgia and Alabama containing defendant's chickens under contractual arrangements as described in the stipulation for the purpose of said feed being fed to defendant's chickens exclusively; that this employee was exempt from the overtime provisions of the Act under the provisions of § 13(b) (1) thereof and that no record was kept by defendant of the hours worked by this employee.

19. That defendant employed Hubert King during the period from November 13, 1958 through March 12, 1959, at a weekly salary of $45 and from March 13, 1959, to "present date" at a weekly salary of $50 per week, as a truck driver, hauling feed from defendant's mill to chicken houses located in Georgia and Alabama containing defendant's chickens under the described contractual arrangements for the purpose of being fed to defendant's chickens exclusively; that this employee was exempt from the overtime provisions of the Act under the provisions of: § 13(b) (1) and that no record was kept by defendant of the hours worked

ed each day and each week of this employee.

20. That defendant employed L. C. Sailors, Jr. during the period from July 27, 1956 through June 7, 1957, at a weekly salary of $42.50; from June 8, 1957 to January 2, 1959, at a weekly salary of $47.50, and from January 3, 1959 to January 16, 1959, at a weekly salary of $55; that this employee worked in defendant's feed mill, doing general mill work such as helping load and unload raw feed materials or mixed feed, both of which were procured, processed and used exclusively for feeding to the defendant's chickens; that he also worked as a serviceman, going around to various chicken houses containing defendant's chickens for the purpose of checking on the condition of such chickens; that during the period of on or about February 9, 1958 through December 20, 1958, in addition to the duties already described that this employee frequently drove defendant's truck hauling feed to its chicken houses located in Georgia and Alabama and that during this latter period such employee was exempt from the overtime provisions of the Act under the provisions of § 13 (b) (1) thereof and that no record was kept by defendant of the hours worked by this employee.

21. That defendant employed Luther Warren in its feed mill performing work in connection with the processing of feed for defendant's chickens during the period of April 12, 1958 through January 2, 1959, at a salary of $65 per week and from January 3, 1959 "to the present date" at a salary of $70 per week; that during all of this time this employee averaged working 50 hours per week and no records were kept by defendant of the hours worked by this employee.

22. That defendant contends that all of its employees mentioned in the stipulation are exempt under the provisions of § 13(a) (6) of the Act as being employees employed in agriculture within the meaning of the Fair Labor Standards Act, as amended.

23. That the duties of and the work performed by the employees as set out in the stipulation are the only duties or

work performed by such employees of defendant.

24. That defendant's entire source of revenue is derived from its one product, to-wit: Live broilers which are the chickens described in the stipulation.

The plaintiff has filed a motion for a partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and moves therein that the Court find, as a matter of law, that the employees named in the stipulation do not fall within the purview of the exemption contained in § 13(a) (6) of the Fair Labor Standards Act of 1938, as amended, for the reason that they are not "employed in agriculture" within the meaning of the Act.

The defendant has filed a response to plaintiff's motion and a cross motion for summary judgment in its favor in which it contends that its employees named in the stipulation fall within the purview of the exemption contained in § 13(a) (6) of the Fair Labor Standards Act of 1938, as amended, for the reason that they are employed in agriculture within the meaning of the Act and that since such employees are engaged in agriculture and exempt, as contended, that no question of fact is left to be resolved and that the question is one of law to be resolved upon defendant's cross motion for summary judgment. In support of its motion the defendant files an affidavit of L. D. McCleskey, Jr. in which the affiant deposes:

That the sole commodity of defendant for sale to the public is a live broiler which it purchases as a baby chick, supplies with feed, vitamins and medicines when necessary for growth, the defendant retaining title to such broilers until they are ready for marketing to processors; that all feeds purchased, ground or mixed by defendant's employees are used solely for feeding to its poultry and that the duties of defendant's employees consist entirely of hauling the baby chicks to the leased chicken houses, mixing and hauling feed for feeding to such chickens, treating the chickens with various medicines and establishing, maintaining and

regulating the heating and ventilation for the benefit of such poultry exclusively, and general caring for poultry and that the baby chicks purchased by defendant and subsequently raised by it are sold by it at the average age of nine weeks to processors of live broilers. The affiant further deposes that the principal factors in the growth of a baby chick to the live broiler stage at which they are sold are the proper feeding, correct ventilation and heating of the houses, proper and adequate feed, specially purchased, ground and mixed by the owner and grower for feeding to said chicks; the administration and application of the necessary medicines and vitamins to assure the health and growth of such chicks and the regular and recurrent examination and inspecting of the chicks to eliminate diseased or otherwise unhealthy chickens; that defendant has, by and through its agents and officers, relied upon United States Department of Labor's interpretative bulletin number 14 issued June, 1950, paragraph 9, part of which reads: "The term 'raising poultry' includes the breeding, feeding, and general care of poultry," and such department's interpretative bulletin title 29, part 780, paragraphs 780.7, 780.8, 780.13, and 780.23, and in particular § 13(a) (6) and § 3(f) of the Fair Labor Standards Act of 1938, as amended, in construing and applying where applicable the provisions of the Act, and in accordance with such reliance, defendant considers itself to be exempt and that its employees are exempt as engaged in agriculture and specifically in the raising of poultry.

The plaintiff's motion for partial summary judgment and defendant's cross motion for summary judgment are both now properly before the Court for determination under the Local Rules of this Court.

The exemptions from coverage of the Act are contained in 29 U.S.C.A. § 213, and sub-section (a) (6) thereof exempts, among others, "any employee employed in agriculture."

The definition of certain terms used in the Act is contained in § 3 thereof [29

U.S.C.A. § 203]. "Person" is defined therein as "an individual, partnership, association, *corporation*, business trust, legal representative, or any organized group of persons" (underscoring supplied).

The term "agriculture" is defined in sub-section (f) of § 203 as follows:

" 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j (g) of Title 12), the *raising* of livestock, bees, fur-bearing animals, or *poultry*, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." (Underscoring supplied.)

The above quoted statutory definition of "agriculture" expressly includes the production of poultry and any practices performed on a farm incident to, or in conjunction with such farming operations, including preparation for market. See Nix v. Farmers Mutual Exchange of Calhoun, 5 Cir., 218 F.2d 642, 644, 645.

From the stipulation of the parties and the affidavit filed in support of defendant's cross motion for summary judgment, it appears that the activities of defendant's employees here involved were either directly connected with, or were incidental to, the "raising of * * * poultry" within the Section of the Act defining agriculture, and its employees thus, in all of their activities as such employees, were engaged in "agriculture" so as to be exempt from coverage of the Act.

The Court being of the opinion that the employees of defendant here involved are exempt from coverage under the Fair Labor Standards Act of 1938, as amended, it is

Ordered that defendant's motion for summary judgment be, and the same is hereby granted. A proper judgment may be prepared and presented.

Plaintiff's motion for a partial summary judgment is denied.