**ABBOTT FARMS, INC., Petitioner-Cross Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.**

**No. 72-3586.**

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1973.

Charles Cleveland, Birmingham, Ala., for petitioner-cross respondent.

Elliott Moore, Acting Asst. Gen. Counsel, N.L.R.B., Washington, D. C., Walter C. Phillips, Regional Director, Atlanta, Ga., William Gaus, N.L.R.B., Washington, D. C., for respondent-cross petitioner.

Before GODBOLD, DYER and GEE, Circuit Judges.

GEE, Circuit Judge:

Abbott Farms, Inc., petitions for review, and the NLRB for enforcement, of the Board's order directing Abbott to bargain with the certified collective bargaining representative of a unit composed of employees who work in or in connection with its feed mill.

Abbott is a family corporation in the poultry and egg business, and other pastoral pursuits, in a large scale in rural Alabama. Some of the eggs from its breeder hens are sold commercially, others are sent to its hatchery. The resulting chicks are reared either as replacement breeders by Abbott, or as broilers by Abbott or by growers under contract to it. Title to all chicks remains in Abbott, which furnishes feed, medicine, etc., to the contract growers as well as to its own rearing operations. The growers provide poultry houses and daily care, and for their services they receive a fixed compensation per pound plus incentive payments. Abbott does not process the birds, but rather sells all broilers raised directly or indirectly by it to poultry plants.

The bargaining unit consists of seventeen employees who mill and distribute about three-quarters of Abbott's feed and medicine requirements, which are produced at its feed mill on one of its farms; Abbott purchases the remaining quarter of these requirements. All products of the mill are consumed by Abbott, none are sold to anyone. Two of the seventeen are in-haul truck drivers bringing feedstuffs, vitamins and other ingredients to the mill. Seven operate the feed mill. Eight are out-haul drivers who take feed to Abbott's breeding operations, hatchery, broiler houses and contract growers.

Almost five years ago, in NLRB v. Strain Poultry Farms, Inc., 405 F.2d 1025 (5th Cir. 1969), this Court denied enforcement on a well-nigh identical fact situation and contention by the Board. The sole factual distinction is that in *Strain* it was the truck drivers delivering finished broilers to market who were sought to be organized.. Then, as now, the National Labor Relations Act provided "The term 'employee' . . . shall not include any individual employed as an agricultural laborer. . . ." 29 U.S.C. § 152(3). Then, as now, Congress had since 1946 added a rider to the NLRB's appropriation bill providing that no part of the appropriation should be used in connection with bargaining units composed of "agricultural laborers" as defined in Section 3(f) of the Fair Labor Standards Act. 29 U.S.C. § 203(f). And then, as now, that section defined "Agriculture" as including:

" . . . farming in all its branches and among other things includes . . . the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

There, as here, the question was whether the poultry raiser was conducting a trucking operation (feed mill) on the side or whether the operation (mill) was part of the poultry raising venture; and the Board relied heavily if not primarily upon Maneja v. Waialua Agricultural Co., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 685 (1955), and NLRB v. Gass, 377 F.2d 438 (1st Cir., 1967), both of which we then found inapposite. Cited

with approval in our opinion in *Strain*, however, is Mitchell v. Georgia Broiler Supply, Inc., 186 F.Supp. 341 (N.D.Ga., 1960), a decision on facts even closer to Abbott's than those in *Strain*: in *Georgia Broiler*, the question was whether employees who worked in just such a feed mill as Abbott's and hauled the feed to contract growers for Mitchell were agricultural employees. The Court held that the raising of poultry was within the primary definition of agriculture set forth in 29 U.S.C. § 203(f) and that the feed production and hauling performed by these employees was incident to or in conjunction with the poultry raising venture as preparation of the birds for market.

Counsel for the Board points out that in *Strain* the truckers hauled the finished product to market, thus falling squarely within § 3(f)'s definition as performing "delivery to market." This faintly distinguishes *Strain* on its facts but not its principles and ignores *Georgia Broiler*, which rests on "preparation for market." 29 U.S.C. § 203(f).

Five years have passed since our *Strain* decision without action by the Congress to disturb it. Our sister circuit has since reversed the Board decision in Victor Ryckebosch, Inc., 189 NLRB No. 8, on which the Regional Director in the instant case relied and by which he felt bound, citing and relying on *Strain* in its opinion. NLRB v. Victor Ryckebosch, Inc., 471 F.2d 20 (9th Cir., 1972). If anything favorable to this Board position has occurred during that period, we have not been advised of it. To enforce this Board order, it would be necessary for us either to overrule *Strain* or to distinguish without differentiating it. We adhere to it.

Enforcement denied.