# BAYSIDE ENTERPRISES, INC., et al. v. NATIONAL LABOR RELATIONS BOARD

No. 75–1267. Argued November 10, 1976—Decided January 11, 1977

*Alan J. Levenson* argued the cause and filed a brief for petitioners.

*Harriet S. Shapiro* argued the cause for respondent. On the briefs were *Solicitor General Bork, John S. Irving, Carl L. Taylor, Norton J. Come,* and *Elinor Hadley Stillman.*

MR. JUSTICE STEVENS delivered the opinion of the Court.

The petitioners, collectively described as "Bayside," are three affiliated corporations operating a large, vertically integrated poultry business in Maine.[1] The question they present is whether six of their employees, who truck poultry feed from their feedmill to 119 farms on which their chickens are being raised, are "agricultural laborers" and therefore not covered by the National Labor Relations Act.

After a few preliminary talks, Bayside refused to bargain with the union representing these drivers on the ground that they were not "employees" within the meaning of the Act.[2] The union's resulting unfair labor practice charge was sustained by the National Labor Relations Board and the Court of Appeals for the First Circuit.[3] An apparent conflict with decisions of the Fifth and Ninth Circuits[4] led us to grant certiorari, 425 U. S. 970. We now affirm.

The protections of the National Labor Relations Act[5] ex-

---

[1] Bayside Enterprises, Inc., and its wholly owned subsidiary Poultry Processing, Inc., are operating corporations; the subsidiary Penobscot Poultry Co. is apparently inactive.

[2] The drivers are represented by Truck Drivers, Warehousemen and Helpers Union, Local No. 340, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. That local and the Amalgamated Meatcutters Local 385 jointly represent employees in petitioners' processing plant.

[3] 216 N. L. R. B. 502, enf'd, 527 F. 2d 436 (1975). The Board's order requires Bayside to bargain with the union.

[4] *NLRB* v. *Strain Poultry Farms, Inc.,* 405 F. 2d 1025 (CA5 1969); *NLRB* v. *Ryckebosch, Inc.,* 471 F. 2d 20 (CA9 1972).

[5] 49 Stat. 449, as amended, 29 U. S. C. § 151 *et seq.*

tend only to "employees." Section 2 (3) of the Act, 29 U. S. C. § 152 (3), provides that the "term 'employee' . . . shall not include any individual employed as an agricultural laborer . . . ." Congress has further provided that the term "agricultural laborer" in the NLRA shall have the meaning specified in § 3 (f) of the Fair Labor Standards Act.[6] It is, therefore, that section and the decisions construing it which are relevant even though this proceeding arose under the NLRA.

Section 3 (f) provides, in relevant part:

> " 'Agriculture' includes farming in all its branches [including] the raising of . . . poultry, and any practices . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations . . . ." 52 Stat. 1060, 29 U. S. C. § 203 (f).

This statutory definition includes farming in both a primary and a secondary sense.[7] The raising of poultry is primary

---

[6] Annually since 1946, Congress, in riders to the Appropriations Acts for the Board, has tied the definition of "agricultural laborer" in § 2 (3) of the NLRA to § 3 (f) of the FLSA. The latest such rider (90 Stat. 23) provides in relevant part as follows:

*"Provided,* That no part of this appropriation shall be available to organize or assist in organizing agricultural laborers or used in connection with investigations, hearings, directives, or orders concerning bargaining units composed of agricultural laborers as referred to in section 2 (3) of the Act of July 5, 1935 (29 U. S. C. 152), and as amended by the Labor-Management Relations Act, 1947, as amended, and as defined in section 3 (f) of the Act of June 25, 1938 (29 U. S. C. 203) . . . ."

[7] "First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation Co.* v. *McComb,* 337 U. S. 755, 762–763.

farming, but hauling products to or from a farm is not primary farming. Such hauling may, however, be secondary farming if it is work performed "by a farmer or on a farm as an incident to or in conjunction with such farming operations . . . ." [7] Since there is no claim that these drivers work "on a farm," the question is whether their activity should be regarded as work performed "by a farmer." The answer depends on the character of their employer's activities.

An employer's business may include both agricultural and nonagricultural activities. Thus, even though most of the operations on a sugar plantation are agricultural, persons employed in the plantation's sugar-processing plant are not "agricultural employees." *Maneja* v. *Waialua Agricultural Co.*, 349 U. S. 254, 264–270. In this case, both parties agree that some of Bayside's operations are agricultural and some are not.

The mill in which Bayside produces poultry feed and the processing plant in which it slaughters and dresses poultry are not agricultural operations.[8] On the other hand, the six farms on which it produces hatching eggs, and its activities in breeding and hatching chicks, are clearly agricultural in character. The parties are in dispute with respect to the character of Bayside's work related to the raising of the chickens.

The chickens are raised on 119 separate farms owned and operated by independent contractors. Pursuant to a standard contractual arrangement, Bayside provides each such farm with chicks, feed, medicine, fuel, litter, and vaccine. Bayside retains title to the chicks and pays the farmer a guaranteed sum, plus a bonus based on the weight of the bird when grown, in exchange for the farmer's services in housing and caring for the chicks. Bayside delivers the chicks to the

---

[8] These operations are conducted by the subsidiary, Poultry Processing, Inc., which employs about 20 workers at its feedmill and about 380 at its processing plant in Belfast, Me.

independent farms when they are one day old and picks them up for processing about nine weeks later. During the nine-week period, the contract farmers feed the chicks with poultry feed delivered to their feedbins by Bayside drivers.

Bayside argues that the activity on the independent farms is part of Bayside's farming operation. The argument is supported by the pervasive character of its control over the raising of the chicks, its ownership of the chicks, its assumption of the risks of casualty loss and market fluctuations, and its control over both the source and the destination of the poultry. In response, the Labor Board argues that the owners of the farms are independent contractors rather than employees of Bayside and therefore the farming activity at these locations is attributable to them rather than to Bayside.

The Labor Board has squarely and consistently rejected the argument that all of the activity on a contract farm should be regarded as agricultural activity of an integrated farmer such as Bayside.[9] This conclusion by the Board is one we must respect even if the issue might "with nearly equal reason be resolved one way rather than another."[10]

---

[9] The Board has held that "when an employer contracts with independent growers for the care and feeding of the employer's chicks, the employer's status as a farmer engaged in raising poultry ends with respect to those chicks." *Imco Poultry*, 202 N. L. R. B. 259, 260 (1973), citing *Strain Poultry Farms, Inc.*, 160 N. L. R. B. 236 (1966); 163 N. L. R. B. 972 (1967), enf. denied, 405 F. 2d 1025 (CA5 1969); *Victor Ryckebosch, Inc.*, 189 N. L. R. B. 40 (1971), enf. denied, 471 F. 2d 20 (CA9 1972). Cf. *Norton & McElroy Produce, Inc.*, 133 N. L. R. B. 104 (1961).

[10] This is an instance of the kind contemplated by Mr. Justice Frankfurter in his concurrence in *Farmers Reservoir & Irrigation Co., supra,* at 770:

"Both in the employments which the Fair Labor Standards Act covers and in the exemptions it makes, the Congress has cast upon the courts the duty of making distinctions that often are bound to be so nice as to appear arbitrary in relation to each other. A specific situation, like that presented in this case, presents a problem for construction which may with nearly equal reason be resolved one way rather than another."

Even if we should regard a contract farm as a hybrid operation where some of the agricultural activity is performed by Bayside and some by the owner of the farm, we would nevertheless be compelled to sustain the Board's order. For the activity of storing poultry feed and then using it to feed the chicks is work performed by the contract farmer rather than by Bayside. Since the status of the drivers is determined by the character of the work which they perform for their own employer, the work of the contract farmer cannot make the drivers agricultural laborers. And their employer's operation of the feedmill is a nonagricultural activity.[11] Thus, the Board properly concluded that the work of the truck drivers on behalf of their employer is not work performed "by a farmer" whether attention is focused on the origin or the destination of the feed delivery.

The Board's conclusion that these truck drivers are not agricultural laborers is based on a reasonable interpretation of the statute, is consistent with the Board's prior holdings,[12] and is supported by the Secretary of Labor's construction of § 3 (f).[13] Moreover, the conclusion applies to but one

---

[11] The Board has found in comparable situations that delivery is incidental to the feedmill operation and therefore not an agricultural activity. *McElrath Poultry Co.*, 206 N. L. R. B. 354, 355 (1973), enf. denied, 494 F. 2d 518 (CA5 1974); *Samuel B. Gass*, 154 N. L. R. B. 728, 732–733 (1965), enf'd, 377 F. 2d 438 (CA1 1967).

[12] *Samuel B. Gass, supra; Strain Poultry Farms, Inc., supra; Victor Ryckebosch, Inc., supra; Abbott Farms, Inc.*, 199 N. L. R. B. 472 (1972), enf. denied, 487 F. 2d 904 (CA5 1973); *Imco Poultry, supra; McElrath Poultry Co., Inc., supra.*

[13] In 1961 the Wage and Hour Division of the Department of Labor issued an interpretative bulletin which remains effective today. It reads, in pertinent part:

"Contract arrangements for raising poultry.

"Feed dealers and processors sometimes enter into contractual arrangements with farmers under which the latter agree to raise to marketable size baby chicks supplied by the former who also undertake to furnish all the required feed and possibly additional items. Typically, the feed

specific instance of the "[m]yriad forms of service relationship, with infinite and subtle variations in the terms of employment, [which] blanket the nation's economy," [14] and which the Board must confront on a daily basis. Accordingly, regardless of how we might have resolved the question as an initial matter, the appropriate weight which must be given to the judgment of the agency whose special duty is to apply this broad statutory language to varying fact patterns requires enforcement of the Board's order.[15]

The judgment of the Court of Appeals is

*Affirmed.*

---

dealer or processor retains title to the chickens until they are sold. Under such an arrangement, the activities of the farmers and their employees in raising the poultry are clearly within section 3 (f). The activities of the feed dealer or processor, on the other hand, are not 'raising of poultry' and employees engaged in them cannot be considered agricultural employees on that ground. Employees of the feed dealer or processor who perform work on a farm as an incident to or in conjunction with the raising of poultry on the farm are employed in 'secondary' agriculture (see §§ 780.137 et seq., [explaining that work must be performed in connection with the farmer-employer's own farming to qualify as 'secondary' agriculture by a farmer] and Johnston v. Cotton Producers Assn., 244 F. 2d 553)." 29 CFR § 780.126 (1975).

[14] *NLRB v. Hearst Publications*, 322 U. S. 111, 126. In that opinion, *id.*, at 131, the Court stated:

"But where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited. Like the commissioner's determination under the Longshoremen's & Harbor Workers' Act, that a man is not a 'member of a crew' (*South Chicago Coal & Dock Co. v. Bassett*, 309 U. S. 251) or that he was injured 'in the course of employment' (*Parker v. Motor Boat Sales*, 314 U. S. 244) and the Federal Communications Commission's determination that one company is under the 'control' of another (*Rochester Telephone Corp. v. United States*, 307 U. S. 125), the Board's determination that specified persons are 'employees' under this Act is to be accepted if it has 'warrant in the record' and a reasonable basis in law." (Footnotes omitted.)

[15] Cf. *NLRB v. United Insurance Co.*, 390 U. S. 254, 260; *Universal Camera Corp. v. NLRB*, 340 U. S. 474, 488; *NLRB v. Coca-Cola Bottling Co.*, 350 U. S. 264, 269.