**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**APOLLO TIRE CO., INC., Respondent.**

**No. 78–3173.**

United States Court of Appeals, Ninth Circuit.

Aug. 14, 1979.

---

Elliott Moore, Patricia C. Matthews, NLRB, Washington, D.C., for petitioner.

Norman H. Kirshman, Kirshman & Rich, David L. Cohen, Kirshman & Rich, Marina Del Rey, Cal., for respondent.

Before WRIGHT and KENNEDY, Circuit Judges, and HALL,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

The issue is whether the National Labor Relations Board (the Board) erred in excluding evidence that the employees charging unfair labor practices by respondent Apollo Tire Co., Inc. (the company) are undocumented aliens not entitled to work and reside in the United States. We hold that employed aliens, regardless of whether or not they have working papers, are "employees" as defined in Section 2(3) of the National Labor Relations Act (NLRA). Consequently, we find no error and enforce the Board's order.

## FACTS

In March, 1977, Hilda Niz, employee Lobos' mother, complained to company General Manager Bostanian that her son had not received overtime pay due him. She stated that, if Bostanian did not pay it, she would go to the "Labor Commission."

Shortly thereafter, Bostanian asked employee Figueroa, Niz' husband, if it was true that his wife had complained to the Department of Labor, and stated that if so, he would have her killed.

On April 18, Niz complained to the Wage and Hour Division of the Department of Labor. She received several complaint forms, printed in Spanish, to distribute to employees. Seven employees returned the complaints to the compliance officer, alleging failure to pay overtime.

---

* Senior District Judge, Central District of California.

On April 22, of the seven who filed complaints six were laid off.[1] The company cited a decrease in sales and consequent buildup in inventory as the reason for the layoffs. Manug,[2] the foreman, testified before the Administrative Law Judge that he chose to lay off those who were least productive, but then gave other reasons for selecting the six. Each laid off employee, except one who spoke little English, testified he was told, among other things, that he was being laid off because he signed papers for the "Labor Commission."

Within a few days, Bostanian decided the company could return to full production and on April 30 he sent letters to the laid off employees asking them to return to work. By May 3 two of the six had done so.

On May 4, the compliance officer from the Wage and Hour Division interviewed Bostanian. The latter made it clear that he knew which employees had complained. That day two more of the laid off employees reported for work but were told that it was too late to start and to report the following day. When they did so, Bostanian refused to rehire them.

The Board found violations of Sections 8(a)(1) and 8(a)(4) of the Act (29 U.S.C. §§ 158(a)(1) and (4)). Its order requires the Company to cease and desist from:

(a) laying off, refusing to reinstate, or otherwise discriminating against employees because they complained to the Department of Labor;

(b) telling employees they would be laid off or would not be rehired if they so complained;

(c) threatening physical harm to employees' relatives who assist in filing such complaints; and

(d) in any other manner interfering with, restraining or coercing employees in the exercise of their rights under Section 7 of the NLRA.[3]

## FEDERAL IMMIGRATION POLICY AND THE NLRA

■ The company contends that, by failing to distinguish between citizens and properly documented aliens on the one hand, and illegal aliens on the other, the Board's policy conflicts with the spirit and provisions of the Immigration and Nationality Act of 1952 (the INA).[4] Specifically, it argues that Congress, mindful of a restrictive immigration policy when it enacted the NLRA to govern relations between management and employees, intended to exclude aliens working without proper authority in the United States from the coverage of the Act.

Section 2(3) of the NLRA (29 U.S.C. § 152(3)) defines "employee" broadly, and provides specific exceptions to coverage of the Act. Illegal aliens are not among those exceptions.[5]

The Board has consistently interpreted the definition to include aliens. *See Seidmon, Seidmon, Henkin & Seidmon*, 102 NLRB 1492, 1493 (1953); *Lawrence Rig-*

---

1. The seventh, Jose Luis Ortis, was employed under the name Abram Flores. It is apparent that the company was not aware of the name he used to file his complaint with the Department of Labor.

2. Foreman Vramsabu Karakezian was commonly known as "Manug."

3. 29 U.S.C. § 157.

4. As amended, 8 U.S.C. § 1101 *et seq.*

5. Section 2(3) of the NLRA reads:
   The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.

ging, Inc., 202 NLRB 1094, 1095 (1973); Handbilling Equipment Corp., 209 NLRB 64, 65 n.5 (1974); Amay's Bakery & Noodle Co., 227 NLRB 214 (1976).

When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.

Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). Accord, Bayside Enterprises v. NLRB, 429 U.S. 298, 304, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977). Because the Board's interpretation and application of the statute is well established, and has not been disturbed by Congress, we defer to its understanding of the statute unless it is clearly in error. NLRB v. Pipefitters, 429 U.S. 507, 528, 97 S.Ct. 891 51 L.Ed.2d 1 (1977).[6]

Only the Seventh Circuit appears to have ruled on the Board's interpretation. In NLRB v. Sure-Tan, Inc., 583 F.2d 355 (7th Cir. 1978), the Chicago Leather Workers Union sought certification as the bargaining representative of the company's employees. After the union had won the election, the company objected that six of the seven voters were illegal aliens. It claimed that certification of the union under such circumstances would conflict with the INA, and cited those provisions requiring aliens seeking to perform labor within the United States to obtain appropriate certification from the Secretary of Labor. See 8 U.S.C. § 1182(a)(14).

The court in Sure-Tan found no inconsistency between the immigration laws and the order to bargain. The majority noted that federal immigration statutes neither prohibit employers from hiring illegal aliens nor prohibit such aliens from working and exercising rights protected by the NLRA.

The INA, which makes it a felony to harbor an illegal alien, provides that employment shall not constitute harboring. Moreover, the Supreme Court has implied that Congress can extend privileges to illegal aliens if it so desires. Sure-Tan, 583 F.2d at 359, citing Mathews v. Diaz, 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1975).

We agree with the Sure-Tan majority that the Board's interpretation best furthers the policies underlying the immigration laws. Were we to hold the NLRA inapplicable to illegal aliens, employers would be encouraged to hire such persons in hopes of circumventing the labor laws. The result would be more work for illegal aliens and violations of the immigration laws would be encouraged.

Furthermore, we hesitate to require the Board to delve into immigration matters, out of its field of expertise. Questions concerning the status of an alien and the validity of his papers are matters properly before the Immigration and Naturalization Service. An employer who suspects that an employee is in the United States without proper authority should report this information to the INS. Our holding merely insures that an employer is not permitted to commit unfair labor practices in the knowledge that the Board is powerless to remedy them.[7]

## STATE IMMIGRATION LAWS

The company argues that, even if the Board's policy is not inconsistent with federal immigration law, the order to reinstate the employees requires it to violate state law. It cites California Labor Code 2805(a):

---

**6.** The company cites two cases said to stand for the proposition that had Congress intended the NLRA to apply to illegal aliens it would have so specified. In Benz v. Compania Naviera Hidalgo, 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957), the Court quoted from the legislative history, "the bill herewith reported has been formulated as a bill of rights both for American workingmen and their employers" (emphasis added by the Supreme Court). See also McCulloch v. Sociedad Nacional, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963). Neither case is controlling here because they did not turn on the definition of employee in the NLRA, but rather on the fact that the alien workers were aboard foreign vessels.

**7.** But see Comment: Labor Law—Illegal Aliens Are Employees Under 29 U.S.C. § 152(3) (1976) And May Vote in Union Certification Elections. NLRB v. Sure-Tan, Inc., 583 F.2d 355 (7th Cir. 1978), 10 Rutgers-Camden L.J. 747 (1979).

No employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers.

In considering § 2805(a), the Supreme Court has held that, although the power to regulate immigration is exclusively a federal power, the INA does not necessarily bar a state's attempt to deal with illegal alien employees. *De Canas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). The Court noted, however, "there are questions of construction of § 2805(a) to be settled before a determination is appropriate whether, as construed, § 2805(a) 'can be enforced without impairing the federal superintendence of the field' covered by the INA." *Id.* at 363, 96 S.Ct. at 940, *citing Florida Lime and Avocado Growers v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Among these questions is whether the statute prevents employment of aliens who are not entitled to lawful residence but are permitted to work in the United States. If it does, it unconstitutionally conflicts with federal law.

The California courts have not yet determined whether administrative regulations allow § 2805(a) to be construed not to conflict with the INA. See California Administrative Code, Title 8, part 1, c. 8, art. 1, § 16209 (1972). Because state law is unsettled, the Board continues to order reinstatement with backpay, placing the employee in the position he would have been but for the illegal discharge. *See Amay's Bakery & Noodle Co., Inc.*, 227 NLRB 214 (1976).

The Board has reached the proper result. In the event that § 2805(a) is found to be enforceable, and if the state authorities attempt to enforce the section based on a reinstatement order, the company may petition for modification of the order.

The Board's factual determinations and findings of unfair labor practices are supported by substantial evidence, and must be considered conclusive by this court. *Penasquito Villiage, Inc. v. NLRB*, 565 F.2d 1074 (9th Cir. 1977). There is no merit to the company's argument that the Administra-

tive Law Judge erred in encouraging Manug to testify without the assistance of an interpreter. We enforce the Board's order.

KENNEDY, Circuit Judge, concurring:

I concur. If the NLRA were inapplicable to workers who are illegal aliens, we would leave helpless the very persons who most need protection from exploitative employer practices such as occurred in this case.