**UNITED PARCEL SERVICE, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**International Brotherhood of Teamsters and Teamsters UPS National Negotiating Committee, Intervenors.**

No. 95–1469.

United States Court of Appeals, District of Columbia Circuit.

Argued May 9, 1996.

Decided Aug. 20, 1996.

---

Martin Wald, Washington, DC, argued the cause and filed the briefs for petitioner.

David Habenstreit, Attorney, National Labor Relations Board, Washington, DC, argued the cause for respondent, with whom Linda R. Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Linda Dreeben, Supervisory Attorney, were on the brief.

Stephen B. Moldof, New York City, argued the cause for intervenors, with whom Judith A. Scott was on the brief.

Before: WALD, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge HENDERSON.

SENTELLE, Circuit Judge:

Since at least 1947, the National Labor Relations Board ("NLRB" or "Board") has regulated the labor relations of United Parcel Service, Inc. ("UPS, Inc." or "petitioner") under the National Labor Relations Act ("NLRA"). *See United Parcel Service of New York, Inc.*, 74 N.L.R.B. 888, 888–89 (1947). For the first time in its long history, UPS, Inc. has contended that it should be governed by the Railway Labor Act ("RLA") (and the National Mediation Board ("NMB"), which administers that Act) instead of the NLRA (and the NLRB). The NLRB, however, refused to certify this challenge to its jurisdiction to the NMB, as UPS, Inc. requested and, instead, concluded for itself that UPS, Inc. was still subject to the NLRA. UPS, Inc. now seeks review of these actions. Because we conclude that the NLRB neither was legally compelled to certify the question to the NMB nor acted arbitrarily in denying the certification, and because the relevant precedent demonstrates that UPS, Inc. is still an NLRA carrier, we must deny its petitions.

## BACKGROUND

The NLRA authorizes the NLRB "to prevent any person from engaging in any unfair labor practice ... affecting commerce." 29 U.S.C. § 160; *see also* 29 U.S.C. § 152(6) (defining "commerce" in this Act to mean interstate commerce). This broad scope of authority has but a few, comparatively narrow exceptions. *See* 29 U.S.C. § 152(2) & (3). One of these limited exceptions excludes any "person subject to the Railway Labor Act" from the NLRA. 29 U.S.C. § 152(2); *see also* 29 U.S.C. § 152(3) (excepting "any individual employed by an employer subject to the Railway Labor Act" from the NLRA). This RLA exception denies the protections of the NLRA to all carriers of freight by rail, *see* 45 U.S.C. § 151 First, or by air, *see id.* at § 181, both of which are instead governed by the RLA as administered by the NMB.

However, the RLA exception to NLRA jurisdiction seldom extends to carriers of freight by truck, as the RLA explicitly exempts from its regulatory ambit even those "trucking services" performed by a company commonly owned and operated with an RLA carrier. 45 U.S.C. § 151 First (applying the RLA to "any company which is directly or indirectly owned or controlled by or under common control with any [RLA] carrier ... and which ... performs any service *(other than trucking service)* in connection with" the freight carried by that RLA carrier (emphasis added)). Because the RLA does not broadly extend to truckers, the NLRB has routinely accepted the responsibility of regulating these carriers' labor relations, as it has for most other industries. Only in the few cases in which a trucking company has essentially existed only to serve a rail or air carrier with which it was commonly owned and operated has the NLRB not exercised jurisdiction. *See, e.g., Chicago Truck Drivers; Helpers and Warehouse Workers Union v. NLRB,* 599 F.2d 816, 819–20 (7th Cir.1979); *Florida Express Carrier, Inc.,* 16 NMB 407, 410–11 (1989).

In these few cases, the NLRB and the NMB have, in the absence of any statute addressing the point, jointly developed their own method for determining their mutual jurisdictional question of whether the NLRA or the RLA governs a particular trucking service. In some cases, the NLRB has chosen to refer unresolved jurisdictional questions to the NMB, and has then chosen to abide by its decision. *See, e.g., Pan–American World Airways, Inc.,* 115 N.L.R.B. 493, 495 (1956). However, if a petitioner, or some party similar to that petitioner, had already been determined to be governed by one of the two acts, the NLRB has typically not referred the matter to the NMB, absent some material change in the nature of the petitioner's business. *See, e.g., Chicago Truck Drivers,* 599 F.2d at 817; *Dobbs Houses, Inc. v. NLRB,* 443 F.2d 1066, 1072 (6th Cir.1971).

United Parcel Services of America ("UPSA") is a notable carrier of road and air freight. It has two primary corporate components. The larger of these two components, UPS, Inc.,[1] employs about 300,000 employees and performs the traditional truck-delivery service of UPSA, which has resulted in UPS, Inc. being undisputably governed by the NLRA for 47 years. The smaller component, the United Parcel Services Company ("UPS, Co."), employs only about 3,000 persons to transport all the air freight shipped by UPSA. UPS, Co. began operations in 1988 and, in 1990, was expressly determined to be an RLA carrier. *See United Parcel Service, Inc.,* 318 N.L.R.B. No. 97, 1, 1995 WL 526364 (Aug. 25, 1995). Its slow growth since that time has not yet caused it to rival its more established affiliate in the amount of freight carried: UPS, Inc. still carries more than 90 percent of all UPSA packages exclusively on the ground. Perhaps in light of this lack of dependence on UPS, Co., UPS, Inc. continued to maintain that it was an NLRA carrier for several years after UPS, Co. had been declared to be governed by the RLA. *See id.* at 2 n. 5.

That stance changed abruptly in 1993. UPS, Inc. was in the process of defending itself against a claim that it had violated a section of the NLRA, the merits of which are not at issue in this appeal. *See id.* at 1. An administrative law judge had already ruled on the entire matter, and the case was pending before the NLRB on exceptions to that decision. At this late stage in the proceeding, UPS, Inc., though it had already admitted NLRB's authority to review the matter in its answer, *see id.* at 2, suddenly challenged NLRB's continued jurisdiction over the carrier. In particular, UPS, Inc. requested the NLRB to ask the NMB whether the RLA should now cover UPS, Inc., in light of the corporation's corporate affiliation with the RLA carrier UPS, Co. In response, the NLRB remanded the question to an administrative law judge, who concluded that the question of the NLRB's continuing jurisdiction over UPS, Inc. should be certified to the NMB. *See id.* at 2–3.

---

1.  UPS, Inc. actually consists of two separate corporations, UPS, Inc. of New York and UPS, Inc. of Ohio. For purposes of this litigation, these two arms of the truck-delivery services of UPS will be viewed as a single corporate entity.

The NLRB reversed. It declined to refer the issue of jurisdiction to the NMB and instead decided that UPS, Inc. remained an NLRA carrier. *See id.* at 4. The NLRB based its decision not to forward this case to the NMB on the lack of material change in the corporation's operations since the corporation had last acknowledged that it was covered by the NLRA. *See id.* It also explained that it was particularly reluctant to permit UPS, Inc. "to transfer to a different system of rights and procedures under the RLA" because, unlike "the more than 100 cases referred by the Board to the NMB in the past," UPS, Inc. had already established many contractual relations through "decades of collective bargaining .... [under] the NLRA." *Id.* Because the NLRB was legally obligated to protect against "interruptions to commerce" that may be caused by such a transfer, the NLRB decided that it was unwilling to risk any adjustment in the status of UPS, Inc. without more compelling justification or more notice to the interested parties. *Id.* The NLRB then re-affirmed that UPS, Inc. is an employer within the meaning of the NLRA, because UPS, Inc. did not principally serve its RLA affiliate, as was required, according to its reading of NMB precedent, to subject a trucking service to the RLA.

UPS, Inc. now argues that the NLRB's decision not to refer this matter to the NMB was illegally arbitrary or otherwise contrary to the law. It relies heavily on the NLRB's recent decision to certify to the NMB the question of whether the truck-delivery services owned by and operated for Federal Express ("FedEx"), a secondary competitor of UPS, should be governed by the RLA as proof that it was illegally mistreated. *See Federal Express Corp.,* 317 N.L.R.B. 1155, 1155–56, 1995 WL 423340 (1995). The NLRB and the intervenor, International Brotherhood of Teamsters, which is the labor organization that generally represents the employees of UPS, Inc., disagree, contending that past precedent, including *Federal Express Corp.,* and practice confirm that the NLRB did not have to refer this matter to the NMB, and that its decision not to do so in this case, which adhered to a well-established exception to its general rule of referral, was sufficiently reasoned to compel us to deny this petition.

UPS, Inc. also disputes whether the NLRB correctly determined that UPS, Inc. should still be classified as an NLRA carrier, assuming that the NLRB could decide that question. UPS, Inc. relies on the result reached by the NMB in *Federal Express Corp.* which it claims holds that a trucking service affiliated with an RLA carrier should be thought an RLA carrier in its own right if its services are an integral part of the offerings of the RLA carrier. *See Federal Express Corp.,* 23 NMB 32, 71–74 (1995). The NLRB counters that, as the trucking services of FedEx essentially exist only to service its RLA carriage, while the petitioner's trucking services perform much business independent of its air-delivery affiliate, and as FedEx, unlike petitioner, has always been an RLA carrier, this NMB precedent, to the extent it is relevant at all, in fact supports the NLRB's decision in the current case.[2]

## DISCUSSION

We must deny both petitions of UPS, Inc. The NLRB did not act improperly when it did not certify the question of whether UPS, Inc. was still an NLRA carrier to the NMB. Nor did it wrongly conclude that UPS, Inc. was such an NLRA carrier. A closer examination of each question demonstrates the reasons behind our results.

### I. The Question of Referral

■ Petitioner first contends that the NLRB was required to refer a question as to whether a carrier was an RLA or an NLRA carrier to the NMB. According to UPS, Inc., because the NMB is the party that administers the RLA, and because a carrier cannot be an NLRA carrier unless it is first excepted from coverage under the RLA, the NMB must enjoy "primary jurisdiction" over any question of whether an entity is an NLRA carrier. As it is the agency with primary jurisdiction, petitioner argues that the NMB, as opposed to other agencies, must

---

**2.** The other party whose interests may be affected by this litigation, the National Mediation Board, declined our invitation to file an *amicus* brief as to either issue.

therefore receive the first opportunity to resolve any question of this type. Petitioner then claims support for its argument from precedent that precludes a court from addressing a particular matter before a particular agency has acted on the question. *See, e.g., United Transportation Union v. United States,* 987 F.2d 784, 790 (D.C.Cir.1993); *Southern Railway Co. v. Combs,* 484 F.2d 145, 149–50 (6th Cir.1973). The rationale of UPS, Inc. thus assumes that, if a court cannot venture to speak to some matter that generally is left to a particular agency until that agency has done so, neither may another agency.

■■■■ The inaccuracy of this assumption is two-fold and fundamental. First, an agency is not a court. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 865–66, 104 S.Ct. 2778, 2792–93, 81 L.Ed.2d 694 (1984). A federal court, whose power is "strictly judicial," *Muskrat v. United States,* 219 U.S. 346, 356, 31 S.Ct. 250, 253, 55 L.Ed. 246 (1911), is properly reluctant to preclude *any* federal agency's deliberations of policy because a federal agency, which is controlled by the political branches of the federal government, is constitutionally better suited than a federal court to render policy decisions. *See Chevron,* 467 U.S. at 865–66, 104 S.Ct. at 2792–93. This principle, however, does not similarly require a federal agency to respect the policy choices of another such agency. Consequently, UPS, Inc. may not presume that precedent that blocks a court's untimely entrance into a policy dispute analogously prohibits an action by another agency in that dispute.

Second, petitioner has not identified any sound basis on which we might order, as the petitioner asks us to do, the NLRB to defer challenges to its jurisdiction to the NMB. In 1971, the Sixth Circuit clearly declared that the NLRB did not need to refer a jurisdictional matter to the NMB. *See Dobbs Houses, Inc.,* 443 F.2d at 1072 (observing that "there is no statutory requirement that [a] question of jurisdiction be submitted for answer first to the [NMB]" and concluding that the NLRB had no other obligation to do so). The intervening years have not only left this opinion undisturbed, but have witnessed a number of instances in which the NLRB, for a variety of reasons, has not certified a jurisdictional question to the NMB. *See, e.g., Chicago Truck Drivers,* 599 F.2d at 817; *Teamsters Union Local No. 287,* 304 N.L.R.B. 119, 120, 1991 WL 166052 (1991); *E.W. Wiggins Airways, Inc.,* 210 N.L.R.B. 996, 996, 1974 WL 4969 (1974). Statutory provision, precedent, and practice do not suggest that we can take it upon ourselves to establish some judicially-enforceable agency hierarchy in these matters. Because the role of the court is to interpret, not invent, we may not create, without legal support or additional guidance from the political branches, the requirement sought by petitioner: that the NMB have the first opportunity to examine every claim that it, not the NLRB, has jurisdiction over a trucking service.

Nor are we persuaded by petitioner that the NLRB's decision not to refer was arbitrary. 5 U.S.C. § 706(2)(A); *cf. United Food and Commercial Workers Int'l Union v. NLRB,* 880 F.2d 1422 (D.C.Cir.1989) (holding that we typically review a final NLRB decision for arbitrariness), *on remand,* 303 N.L.R.B. 386, 1991 WL 146795 (1991), *enf'd in part and remanded,* 1 F.3d 24 (D.C.Cir. 1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 1395, 128 L.Ed.2d 69 (1994), *cert. dismissed,* —— U.S. ——, 114 S.Ct. 2157, 128 L.Ed.2d 882 (1994), *appeal after remand,* 38 F.3d 609 (1994). Although the NLRB has generally referred RLA jurisdictional questions to the NMB, that practice has several well-established exceptions. As noted, the NLRB typically does not refer a party to the NMB once the NMB has already determined that that party is not an RLA carrier, or once the party has already acknowledged the NLRB's jurisdiction, unless the party demonstrates some intervening material change in its circumstances. *See, e.g., Teamsters Local No. 287,* 304 N.L.R.B. at 120; *Local 295, Teamsters,* 255 N.L.R.B. 1091, 1092, 1981 WL 21125 (1981); *Hot Shoppes, Inc.,* 143 N.L.R.B. 578, 581 (1963). Although none of these cases explicitly addresses whether the exception should apply when a trucking service's parent company starts its own airfreight company, the rationale underlying the exception certainly permits the NLRB to

extend the exception to encompass this case without referral to the NMB, *cf. Air California,* 170 N.L.R.B. 18, 18–19 (1968) (not certifying a jurisdictional question to the NMB because it resembled an already decided matter), as long as the trucking service has not undergone some significant change in its operations in light of its parent's new subsidiary. As UPS, Inc. has not demonstrated such a change here—it still largely operates independently of UPS, Co.—and as UPS, Inc. has in fact repeatedly and recently acknowledged that the NLRB still maintains jurisdiction over its labor disputes, *see, e.g., United Parcel Service,* 312 N.L.R.B. 596 (1993); *United Parcel Service,* 304 N.L.R.B. 693, 1991 WL 176489 (1991), the NLRB did not act arbitrarily in refusing to again refer the question of its jurisdiction over UPS, Inc. to the NMB.

In light of this reasoning, the NLRB's decision to refer the matter of FedEx's trucking services to the NMB is entirely consistent with its *refusal* to refer this case. *See Federal Express Corp.,* 317 N.L.R.B. at 1155–56. In *Federal Express Corp.,* the NLRB expressly noted that it was referring the matter to the NMB because:

1) the "jurisdictional issue [was] doubtful" and requiring analysis of "very difficult questions of interpretation under the RLA;" *id.* at 1155; and

2) the NLRB had "never asserted jurisdiction over" the carrier involved, *id.* at 1155–56.

In this case, neither criterion was met. The jurisdictional issue here was not doubtful, as UPS, Inc. had not significantly changed the nature of its business vis-a-vis UPS, Co. since the last time UPS, Inc. had accepted NLRB jurisdiction, *see infra Part II,* and the NLRB had uniformly exercised jurisdiction over UPS, Inc. since 1947. Despite superficial similarities in the nature of the services provided by UPS and FedEx, then, the NLRB's concise analysis in *Federal Express Corp.* merely underscores that the Board acted within its power and past policy when it declined to refer this matter to the NMB.

## II. The Question of Jurisdiction

■ Having concluded that the NLRB properly refused to refer the jurisdictional question to the NMB, we now must examine whether the NLRB properly determined that petitioner is still an NLRA carrier. At some level, this jurisdictional determination is premised on an interpretation of the RLA, as only employers who are deemed excluded from the scope of the RLA may be regulated by the NLRA. As the scope of the NLRB's jurisdiction thus depends on an interpretation of the RLA, which the NLRB does not administer, we cannot simply assume that the NLRB should receive *Chevron* deference in this case, *see Chevron,* 467 U.S. at 842–45, 104 S.Ct. at 2781–83, even though we have previously concluded that we should generally defer to an agency's interpretation of the statute that defines its jurisdiction. *See Oklahoma Natural Gas Co. v. FERC,* 28 F.3d 1281, 1283 (D.C.Cir.1994). Rather than relying on *Chevron,* however, the NLRB has expressly sought another type of deference in this case. *See Bayside Enterprises, Inc. v. NLRB,* 429 U.S. 298, 300–04, 97 S.Ct. 576, 578–81, 50 L.Ed.2d 494 (1977).

Decided some seven years before *Chevron* revolutionized federal administrative law, *Bayside* deference emerged from a general conclusion that the NLRB, as the leading labor agency, deserved some deference on difficult questions of labor law. In *Bayside,* the Court determined that it should defer to the NLRB's reasonable interpretation of what constituted an "agricultural laborer" for purposes of determining the scope of the NLRA, even though that term, according to explicit congressional instruction, was to be defined by the Fair Labor Standards Act. *See* 429 U.S. at 300–02, 97 S.Ct. at 578–80. Because the issue was so close, the Court ordained the NLRB's reasonable interpretation as "one we must respect." *See id.* at 302, 97 S.Ct. at 580. The Supreme Court has recently confirmed that its seminal *Chevron* decision did not disturb the deference owed to the NLRB under *Bayside* in interpreting the term "agricultural laborer," *see Holly Farms Corp. v. NLRB,* — U.S. —, — – —, 116 S.Ct. 1396, 1400–02, 134 L.Ed.2d 593 (1996), even though the Department of

Labor is the agency that administers the Fair Labor Standards Act, and thus is the agency whose interpretations of that Act would typically be thought to receive deference under *Chevron. See Chevron,* 467 U.S. at 844–45, 104 S.Ct. at 2782–83. In fact, the *Holly Farms* Court suggested that its review of the NLRB's interpretation in that case implicated both *Bayside* and *Chevron* considerations. *See Holly Farms Corp.,* —— U.S. at ——–——, ——, 116 S.Ct. at 1401–02, 1406; *id.* at ——, 116 S.Ct. at 1407 (O'Connor, J., dissenting). In *Holly Farms,* however, the Court did not specify as to whether either or both decisions extended to the NLRB's interpretations of jurisdictional provisions of the NLRA other than the Act's explicit exception as to persons employed as agricultural laborers. *See id.* at ——–——–——, 116 S.Ct. at 1400–02; *see also Bayside Enterprises, Inc.,* 429 U.S. at 302 n. 10, 97 S.Ct. at 580 n. 10 (suggesting that *Bayside* deference may only be limited to cases involving terms defined in the FLSA). *But see Holly Farms Corp.,* —— U.S. at ——, 116 S.Ct. at 1406 (suggesting that courts should defer to any reasonable interpretation of the jurisdictional provisions of the NLRA by the NLRB); *NLRB v. Hearst Publications, Inc.,* 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944) (indicating that courts should defer to the NLRB's interpretations of its jurisdictional provisions).

Even without any such deference, however, we conclude that the NLRB's determination in this case is correct. *See, e.g., Illinois Commerce Comm'n v. ICC,* 879 F.2d 917, 921 (D.C.Cir.1989) (not deciding whether to extend deference to a particular interpretation of an agency when deference does not affect the ultimate result). The petitioner is not an RLA carrier because it falls within the "trucking service" exception of the RLA.

The apparent meaning and traditional application of the statute supports our conclusion. The words of the statute underscore that trucking services are usually exempt from the dictates of the RLA, even if the services are provided by a company that is commonly owned and operated with an RLA carrier. *See* 45 U.S.C. § 151 First ("The term 'carrier' [for purposes of the RLA] includes any ... carrier by railroad ... and any company which is ... owned or controlled by ... any carrier by railroad [or air] and which ... performs any service *(other than trucking service)* in connection with the ... handling of property transported by railroad [or air]." (emphasis added)). Moreover, the NMB has typically required a trucking service that is commonly owned and operated with an RLA carrier to meet at least three criteria before the NMB would consider exercising jurisdiction over the service:

1) the trucker must perform services principally for an RLA carrier with which it is affiliated;

2) the trucker must be an integral part of that affiliate; and

3) the trucker must provide services "essential to the [RLA] carrier's operations."

*United Parcel Service, Inc.,* 318 N.L.R.B. at 4 (citing *Florida Express Carrier, Inc.,* 16 NMB 407, 410 (1989)). In applying this test to other trucking services associated with RLA carriers, the NMB has often referred to the extent of the trucker's business that flowed directly from its affiliated RLA carrier. In the two leading cases in which the NMB declared that it had such derivative jurisdiction over a trucking service, the service either worked "almost exclusively" for its associated RLA carrier, *O/O Truck Sales,* 21 NMB 258, 272 (1994), or it received at least 80 percent of its business from that carrier. *See Florida Express Carrier, Inc.,* 16 NMB at 411.

According to the facts found by the administrative law judge and affirmed by the NLRB, UPS, Inc. does not receive even a tenth of its business from its RLA associate, never mind receiving eight-tenths. *See* 318 N.L.R.B. at 1–2. Faced with this gross disparity between the facts of this case, and the standard sketched by relevant NMB precedent, we must conclude that UPS, Inc., as it presently operates, does not "principally" serve UPS, Co. In light of petitioner's failure to meet the "principally serving" standard, and petitioner's long-established status as an NLRA carrier, which is a factor that both the NLRB and the NMB have agreed to be of some importance in these matters, *see Federal Express Corp.,* 23 NMB at 69–70,

we must conclude that the NLRB properly determined that UPS, Inc. remained an NLRA carrier.

That the NMB did not specifically mention the requirement that a trucking service principally serve its affiliated RLA carrier in its recent decision in *Federal Express Corp.,* see 23 NMB at 73–74, does not trouble our result. In that case, the NMB had no occasion to discuss its trucking-services test in detail because the test was not implicated by the facts of the case. However, in a passing dicta on that test, the NMB still explicitly endorsed case law that emphasizes the complete dependence of FedEx's trucking services on its air-freight services. *Id.* at 74 (citing *Federal Express Corp. v. California Pub. Util. Comm'n,* 936 F.2d 1075, 1078 (9th Cir.1991), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992)). This precedent makes it abundantly clear that FedEx's trucking services, unlike UPS, Inc., do principally serve FedEx's air-delivery services. *See Federal Express Corp.,* 936 F.2d at 1078 ("The trucking operations [of FedEx] are not some separate business venture; they are part and parcel of the air delivery system. Every truck carries packages that are in interstate commerce by air."). Because UPS, Inc. has not even approached a showing of similar dependence on its affiliated RLA carrier, we cannot disturb the NLRB's conclusion that it maintains jurisdiction over UPS, Inc., as it has for the last 47 years.

## CONCLUSION

Petitioner has not presented, nor have we found, any legal or logical basis in this case to interfere with the NLRB's long-standing practice of not referring resolved or clear jurisdictional questions to the NMB. Having reached this conclusion, we also see no sufficient reason to disturb the NLRB's ultimate decision that petitioner here is still subject to the NLRA, as that determination is in accord with the relevant precedent and UPS, Inc.'s well-established status as an NLRA carrier.

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

Because I agree with my colleagues that the NLRB was not required to consult the NMB and that the petitioner is subject to the NLRB's regulation under the NLRA, I concur. I do so, however, without regard to the question of deference. In my opinion, neither conclusion has anything to do with deference to the agencies involved. We are faced here with a simple jurisdictional question: Does the petitioner perform a "trucking service," thereby coming within the RLA's clear and explicit exception. We all agree that it does. To the extent that our decision rests on our own reading of the statutory language, I am pleased to join it.