William **COLEMAN** et al.,
Plaintiffs–Appellants,

v.

**SANDERSON FARMS, INC.,**
Defendant–Appellee.

No. 79–3624
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

Nov. 5, 1980.

Peter K. Smith, Quitman, Miss., William B. Sullivan, Laurel, Miss., for plaintiffs—appellants.

Donald S. Shire, Associate Sol., Mary—Helen Mautner, Thomas Allen, U. S. Dept. of Labor, Washington, D. C., amicus curiae.

Kullman, Lang, Inman & Bee, Walter W. Christy, New Orleans, La., for defendant—appellee.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

CHARLES CLARK, Circuit Judge.

The integration of the broiler chicken industry continues to produce litigation in this circuit. The issue on this appeal is whether the "loader operators" and "live haul drivers" for Sanderson Farms, Inc. are "employees employed in agriculture" and thereby exempt from the overtime provisions of the Fair Labor Standards Act. We conclude that they are agricultural employees and affirm the district court.

The facts are largely undisputed, having been the subject of a joint stipulation. Sanderson Farms is a closely held, family controlled corporation which, together with its three wholly owned subsidiaries, conducts a vertically integrated poultry business in Mississippi and Louisiana. Its operations include feed mills for production and delivery of chicken feed, breeding farms for pullet development and hatching egg production, chicken hatcheries, broiler growout operations, and poultry processing plants. The company's final product is live broilers which, after being grown out, are caught, cooped, and hauled to market.

Sanderson's operations are apparently typical of those prevailing in the poultry industry. *See generally National Broiler Marketing Ass'n v. United States*, 436 U.S. 816, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978), *aff'g* 550 F.2d 1380 (5th Cir. 1977); *Bayside Enterprises, Inc. v. N. L. R. B.*, 429 U.S. 298, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977); *Spartan Grain & Mill Co. v. Ayers*, 517 F.2d 214 (5th Cir. 1975). Sanderson's production division hatches broiler chicks in company hatcheries from eggs produced by its own flocks. After innoculating and debeaking the chicks, Sanderson delivers them to producer broiler farms. These growout farms raise the chicks to broiler age. Although some of them are owned by Sanderson, the majority of the growout farms are owned and operated by independent contract growers. The contract grower assumes the daily husbandry of the growing chickens, feeding and watering them as well as providing them with housing facilities and general care. The contract growers do not make any important decisions involving the chickens, however, and assume none of the risks. Sanderson Farms retains title to the chickens at all times, and the risk of market loss remains with the company throughout the operation. Sanderson also delivers food, medicine, and supplies for the care and feeding of the chicks. Company supervisors make routine daily or bi—weekly visits to the farms in order to provide medical services for the chickens, consult with the farmers, and inspect the growout operation. About eight weeks after the chicks have been placed on the growout farms, Sanderson picks up the grown out broilers and delivers them to the processing divisions of the company or, occasionally, to outside processors. All transactions between Sanderson's producing corporations and processing corporations are conducted formally and at arm's length.

It is in this phase of the operation that the plaintiffs are employed. They are loader operators and live haul drivers in the live haul section of the broiler unit, one of five

units organized under the production division of Sanderson Farms, Inc. Each night the catching and live haul superintendent for Sanderson designates a number of farms for the harvesting of chickens and dispatches chicken catching crews, loader operators, and live haul drivers to those locations. After the live haul driver obtains his schedule of farms where harvesting is to take place, he then picks up his tractor and flatbed trailer loaded with empty chicken coops. The live haul driver then proceeds to the first farm on his schedule. Meanwhile, the loader operator assists in transporting his forklift by flatbed truck to the first farm on the schedule and then assists the catching foreman in spotting the live haul trucks as they arrive at the farm. The loader operator removes the coops from the trailer bed to the chicken houses, then transfers them back onto the bed of the trailer after they have been filled with chickens by the chicken catching crew. Once all the chickens at the designated farms have been caught, cooped, and loaded the live haul driver proceeds with the loaded vehicle either to the live haul shed or to one of the two processing plants. Sanderson Farms pays both loader operators and live haul drivers on a straight time hourly basis and does not pay them any overtime compensation for hours worked in excess of forty hours per week.

The employees brought this suit against Sanderson Farms, Inc. to recover overtime compensation alleged to be due them under the Fair Labor Standards Act.[1] Sanderson maintained that these employees fit within the agricultural employee exemption and are not entitled to receive overtime compensation. The district court agreed and entered judgment for Sanderson.

The Act states that the overtime pay provisions are not applicable to "any employee employed in agriculture ..." 29 U.S.C. § 213(b)(12). Section 203(f) provides the definition of "agriculture" as it is used within the context of the Fair Labor Standards Act.

"Agriculture" includes farming in all its branches and among other things includes ... the raising of ... poultry, and any practices ... performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f). Under the plain language of the statute, these loader operators and live haul drivers are "employees employed in agriculture." Sanderson Farms is engaged in poultry raising, an enterprise specifically enumerated in the statute. Surely the transportation of grownout broiler chickens to the processing plants is a practice "performed by a farmer ... as an incident to or in conjunction with such farming operations." This conclusion should be particularly compelling in light of the express statutory inclusion of "preparation for market" and "delivery to storage or to market" as activities incident to farming practices.

Nevertheless, plaintiffs argue that the district court incorrectly relied upon *N. L. R. B. v. Strain Poultry Farms, Inc.*, 405 F.2d 1025 (5th Cir. 1969) in finding that they were agricultural employees. On facts substantially similar to those presented in this case, *Strain Poultry* held that live haul truckers were agricultural workers exempt from coverage under the National Labor Relations Act.[2] Plaintiffs say that the Su-

---

1. Section 7 of the Act provides:

    Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate

not less than one and one half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

2. The protections of the National Labor Relations Act extend only to "employees." Section 2(3) of the Act, 29 U.S.C. § 152(3) provides that the "term 'employee' ... shall not include any individual employed as an agricultural laborer ...." Congress has further provided that the term "agricultural laborer"

preme Court granted certiorari in *Bayside Enterprises, Inc. v. N. L. R. B.*, 429 U.S. 298, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977) to reconcile the "apparent conflict" between the Circuits, specifically citing our *Strain Poultry* decision. *Id.* at 299 n.4, 97 S.Ct. at 578 n.4, 50 L.Ed.2d at 497 n.4. Because the Supreme Court adopted the contrary line of authority, plaintiffs insist *Strain Poultry* is no longer viable precedent. Moreover, they point out that this court has twice recognized in dicta the demise of *Strain Poultry*. See *Marshall v. Abbott Farms, Inc.*, 559 F.2d 1006, 1007 (5th Cir. 1977); *United States v. National Broiler Marketing Association*, 550 F.2d 1380, 1390 (5th Cir. 1977), aff'd, 436 U.S. 816, 98 S.Ct. 2122, 56 L.Ed.2d 728 (1978). We reject this uncritical reading of *Bayside.*

In *Strain Poultry* we found that live haul drivers were employed in agriculture because the agricultural activities of independent contract growers were attributable to their employer. 405 F.2d at 1032. Bayside proposed that rationale in its own favor, arguing that the agricultural activity conducted on the independent growing farms was a part of its own farming operations. The Supreme Court, however, expressly rejected that analysis.

> The Labor Board has squarely and consistently rejected the argument that all the activity on a contract farm should be regarded as agricultural activity of an integrated farmer such as Bayside. This conclusion by the Board is one we must respect even if the issue might "with nearly equal reason be resolved one way rather than another."

429 U.S. at 302, 97 S.Ct. at 580, 50 L.Ed.2d at 499 (footnotes omitted).

However, the fact that the *Strain Poultry* rationale was rejected by the Court in *Bayside* does not mean that *Strain Poultry* has no further currency. An examination of the employment status of Sanderson's loader operators and live haul drivers under *Bayside* principles demonstrates this. In *Bayside*, the Supreme Court had before it truck drivers engaged in transporting poultry feed from Bayside's feed mill to the independent contract farms where the chickens were being raised. The Court observed that the statutory definition of "agriculture" included both primary and secondary farming.[3]

> The raising of poultry is primary farming, but hauling products to or from a farm is not primary farming. Such hauling may, however, be secondary farming if it is work performed "by a farmer or on a farm as an incident to or in conjunction with such farming operations . . . ." Since there is no claim that these drivers work "on a farm," the question is whether their activities should be regarded as work performed "by a farmer." *The answer depends on the character of their employer's activities.*

429 U.S. at 300–01, 97 S.Ct. at 579, 50 L.Ed.2d at 498 (emphasis supplied). Noting that an employer's business might include both agricultural and nonagricultural components, the Court concluded that Bayside's operation of the feedmill was a nonagricultural activity. "*Since the status of the drivers is determined by the character of the work which they perform for their own employer,* the work of the contract farmer cannot make the drivers agricultural laborers." *Id.* at 303, 97 S.Ct. at 580, 50 L.Ed.2d at 500 (emphasis supplied).

in the NLRA shall have the meaning specified in § 3(f) of the Fair Labor Standards Act. *Bayside Enterprises, Inc. v. N. L. R. B.*, 429 U.S. 298, 299 300, 97 S.Ct. 576, 578, 50 L.Ed.2d 494, 498 (1977) (footnotes omitted).

3. First, there is the primary meaning. Agriculture includes farming in all its branches. Certain specific practices such as cultivation and tillage of the soil, dairying, etc., are listed as being included in this primary meaning. Second, there is the broader meaning. Agriculture is defined to include things other than

farming as so illustrated. It includes any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidentally to or in conjunction with "such" farming operations. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63, 69 S.Ct. 1274, 1278, 93 L.Ed. 1672 (1949), *quoted in Bayside Enterprises, Inc. v. N. L. R. B.*, 429 U.S. 298, 300 n.7, 97 S.Ct. 576, 579, n.7, 50 L.Ed.2d 494, 498 n.7 (1977).

Sanderson's live haul drivers and loader operators are in a situation distinctly different from those in *Bayside* and must be regarded as agricultural employees. Of course, they derive their employment status from the character of Sanderson's activities and not from the kind of work performed on the contract farms. But, unlike the operation of a feedmill in *Bayside*, Sanderson's practice here must be characterized as agricultural activity. Transportation of grownout broiler chickens from the contract farms where they are raised to the processing plants where they are sold is clearly work performed "by a farmer ... as an incident to or in conjunction with" Sanderson's primary farming task of raising poultry. Any doubt that this is the case is removed by the express statutory language including "preparation for market" and "delivery to storage or to market" as practices incidental to any agricultural enterprise. 29 U.S.C. § 203(f). Sanderson's transportation of the grownout chickens to market is a secondary farming activity, and its loader operators and live haul drivers are, therefore, "employees employed in agriculture" and not entitled to receive overtime compensation. *But see Valmac Industries, Inc. v. N. L. R. B.*, 599 F.2d 246 (8th Cir. 1979).[4]

The agricultural exemption, like the other exemptions provided in the Fair Labor Standards Act, must be narrowly construed against the employer who asserts it. Its application must be limited to those who come "plainly and unmistakably" within its ambit. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945); *Wirtz v. TiTi Peat Humus Company*, 373 F.2d 209, 212 (5th Cir. 1967).

Sanderson's employees clearly come within the scope of the exemption. Any other result would render meaningless the explicit language of the Act. The judgment of the district court is

AFFIRMED.

4. It should be observed that both *Valmac Industries* and *Bayside* arose under the National Labor Relations Act and that the Supreme Court based its conclusion that the Bayside feed truck drivers were not agricultural employees in part on the policy of respect toward prior Board determinations. "[R]egardless of how we might have resolved the question as an initial matter, the appropriate weight which must be given to the judgment of the agency whose special duty is to apply this broad statutory language to varying fact patterns requires enforcement of the Board's order." 429 U.S. at 304, 97 S.Ct. at 581, 50 L.Ed.2d at 501. Given the different procedural posture of this case and a different agency, the policy of judicial deference to the administrative determinations of the National Labor Relations Board is inapplicable.