Alexis HERMAN, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

CONTINENTAL GRAIN CO., d/b/a
Wayne Farms, Defendant.

No. Civ.A. 99–A–616–N.

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 18, 2000.

Henry L. Solano, Jaylynn K. Fortney, Atlanta, GA, for plaintiff.

Robert D. Segall, Montgomery, AL, Michael B. Wallace, Jackson, MS, for defendant.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (Doc. # 15) filed by the Defendant, Continental Grain Company ("Continental"). The Secretary of the Department of Labor, Alexis M. Herman, (the "Secretary") filed this action on June 16, 1999, alleging that Continental violated the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. 201 et seq., by failing to pay its "live haul crews" overtime wages.

While this case was before Magistrate Judge Walker, Continental requested a temporary stay pending resolution of its Motion to Intervene in a declaratory judgment action involving similar issues that was brought by Sanderson Farms against the Secretary in the Southern District of Mississippi. On September 30, 1999, Continental's Motion to Intervene in the Sanderson case was denied by a Magistrate Judge in the Southern District of Mississippi. Accordingly, Magistrate Judge Walker denied Continental's Motion for a Temporary Stay in these proceedings.[1]

Continental's Motion to Dismiss followed on October, 20, 1996. The Secretary filed

---

1. In its brief in support of its Motion to Dismiss, Continental requests again that these proceedings be stayed pending the outcome of the Sanderson litigation. The United States District Court for the Southern District of Mississippi, however, dismissed that action

her Response on November 15, 1999, and Continental filed its Reply on November 22, 1999, at which time the Motion was taken under submission.

For the reasons discussed below, Continental's Motion to Dismiss is due to be DENIED.

## II. *STANDARD FOR DISMISSAL*

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the Complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not ... [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). In deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. This standard im-

poses an "exceedingly low" threshold on the nonmoving in order to survive a motion to dismiss for failure to state a claim that reflects the liberal pleading requirements set down in the Federal Rules of Civil Procedure. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

## III. *ALLEGATIONS*

■ The allegations in the Secretary's Complaint are as follows:

The Secretary has brought this action pursuant to her statutory authority to enforce violations of the FLSA. The Secretary alleges that Continental, a poultry producer, has failed to comply with the applicable overtime compensation statutes with respect to its employees engaged in "live haul crew work[,] which includes catching and transportation of chickens for shipment in interstate commerce...."[2] *Complaint* at 2.

Specifically, the Secretary brought this action pursuant to § 17 of the FSLA, 29 U.S.C. § 217, and §§ 15(a)(1) and 15(a)(2) of the Act, 29 U.S.C. § 215, to enjoin Continental from violating the overtime pay provisions of the Act as described in 29 U.S.C. § 207. The Secretary also

---

and denied Continental's Motion to Intervene on December 6, 1999. *See Sanderson Farms, Inc. v. Alexis M. Herman,* No.1998–CV–278–GR (S.D.Miss.1999). Accordingly, Continental's Motion for a Temporary Stay is due to be DENIED (again).

2. A "live haul crew worker" is a type of worker that has most often been the subject of controversy in applying the section 203(f) exemption. In *Holly Farms Corp. v. NLRB,* 517 U.S. 392, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996) the Supreme Court described the nature of a live haul crew, which is apparently similar throughout the industry, as follows:

Broiler chickens are birds destined for human food markets. Holly Farms hatches broiler chicks at its own hatcheries, and immediately delivers the chicks to the farms of independent contractors. The contractors then raise the birds into full-grown broiler chickens. Holly Farms pays the contract growers for their services, but retains title to the broilers and supplies the food and medicine necessary to their growth.

When the broilers are seven weeks old, Holly Farms sends its live-haul crews to reclaim the birds and ferry them to the processing plant for slaughter. The live-haul crews—which typically comprise nine chicken catchers, one forklift operator, and one live-haul driver—travel in a flat-bed truck from Holly Farms' processing plant to the farms of the independent growers. At the farms, the chicken catchers enter the coops, manually capture the broilers, and load them into cages. The forklift operator lifts the caged chickens onto the bed of the truck, and the live-haul driver returns the truck, with the loaded cases and the crew, to Holly Farms' processing plant. There, the birds are slaughtered and prepared for shipment to retail stores.

*Id.* at 396, 116 S.Ct. 1396 (citations and footnotes omitted). The court includes this information only to help explain the nature of the case before it-the court here makes no findings regarding Continental's live haul crew workers.

brought this action pursuant to § 16(c) of the Act, 29 U.S.C. § 216(c), which makes an employer who violates the compensation provisions of the Act liable for unpaid wages "and an additional equal amount as liquidated damages."[3] The Secretary alleges further a violation of 28 U.S.C. § 211(c), which mandates that a covered employer "make keep, and preserve such records of the persons employed by him and of the wages, hours, and other practices of employment maintained by him, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation...." These regulations are found at 29 U.S.C. § 516 et seq.

## IV. *DISCUSSION*

Continental has filed a Motion to Dismiss for failure to state a claim upon which relief can be granted on the basis that the Continental employees described in the Complaint are exempt from the mandatory overtime compensation provisions of the Act by virtue of 29 U.S.C. § 213(b)(12). Section 213(b)(12) exempts "any employee employed in agriculture" from the Act's overtime compensation provisions. For the purposes of the FLSA, "agriculture" is defined in § 203(f) as follows:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f) (emphasis added).

It is the scope of the "employed in agriculture" exemption in § 213(b)(12) and the companion definition of "agriculture" in § 203(f) that are presently at issue. In briefs submitted to the court, Continental claims that the workers described in the Complaint are employees that fall within the statutory exemption. The Secretary maintains that (1) this is an inappropriate issue to be considered on a Motion to Dismiss because it would require the court to adduce facts that are not contained in the Complaint and (2) the specified employees are not in a class of employees that is covered by the exemption. Both sides have presented various arguments for these assertions.

### 1. *Fact Specific Nature of Exemption*

In the present context, the salient feature of the precedents that have grappled with the dividing line between the agricultural and the non-agricultural for the purposes of the FLSA has been the fact intensive inquiry they have undertaken. As is discussed below, courts often hinge the distinction between the qualifying and the non-qualifying employee on the exact nature of the work performed, the organiza-

---

**3.** As used in the FLSA, the term "liquidated damages" is somewhat misleading. "It is not a sum certain, determined in advance as a means of liquidating damages that may be incurred in the future. It is an award of special or exemplary damages added to the normal damages." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 n. 3 (2d Cir.1988). Continental points out, pursuant to § 11 of the Portal–to–Portal Act, 29 U.S.C. § 260, liquidated damages may be remitted "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [Act]." At all times under 29 U.S.C. § 260, the employer bears the burden of establishing, by "plain and substantial" evidence, *Reich v. Southern New England Telecommunications*, 121 F.3d 58, 70 (2d Cir.1997), subjective good faith and reasonableness. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir.1991). Continental also makes various other argument regarding the Portal–to–Portal Act. There is no evidence, however, before the court upon which to base a ruling as to what effect, if any, the Portal–to–Portal Act has on this case.

tion and structure of the employer's business, and the relationship between the two. The Secretary has emphasized the "fact intensive" nature of the exemption question and argued that, as a result, it is inappropriate to apply the exemption on a Motion to Dismiss. For the reasons discussed below, the court agrees with the Secretary that, in this case, the determination of whether an employee is exempt would involve resort to facts not apparent from the face of the Complaint.

Recently, the United States Supreme Court revisited the question of the dividing line between the exempt and the non-exempt under the FLSA in *Holly Farms Corp. v. NLRB*, 517 U.S. 392, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996). *Holly Farms* was not an FLSA case, but instead involved a dispute over the classification of certain workers under the National Labor Relations Act (NLRA). *See Holly Farms*, 517 U.S. at 394, 116 S.Ct. 1396. Nonetheless, as the Court explained, "annually since 1946, Congress has instructed, in

riders to Appropriations Acts for the Board: '[A]gricultural laborer,' for NLRA § 2(3) purposes, shall derive its meaning from the definition of 'agriculture' supplied by § 3(f) of the Fair Labor Standards Act of 1938 (FLSA)." *Id.* at 397, 116 S.Ct. 1396 (*citing Bayside Enterprises, Inc. v. NLRB*, 429 U.S. 298, 300, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977)). Therefore, the Court turned to interpretation of the scope of the definition of "agriculture" in the FLSA.

In *Holly Farms*, the Court relied heavily on its prior decision in *Bayside*. There the Court explained that the definition of agriculture "includes farming in both a primary and a secondary sense." *Bayside*, 429 U.S. at 300, 97 S.Ct. 576. "Primary farming includes the occupations explicitly listed in the first part of § 3(f): 'the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities ... [and] the raising of livestock, bees, fur-bearing animals, or poultry.'[4] Secondary farming has a broader

---

4. Applicable regulations indicate that the "primary" meaning of agriculture includes listed activities, and "[i]f an employee is employed in any of these activities, he is engaged in agriculture regardless of whether he is employed by a farmer or on a farm." 29 C.F.R. § 780.105(b). Furthermore, pursuant to 29 C.F.R. § 780.106, persons engaged in activities listed as primary agriculture are included within the exemption, and the purpose of the employer in performing the activity or the place where it is performed are "immaterial." 29 C.F.R. § 780.106.

The degree of deference owed the agency regulations has been raised by both parties. The degree of deference to be accorded an agency's interpretation of a statute Congress has charged it with administering varies, depending on several factors, including the existence of a statute mandating a standard of review, the form and formality of the interpretation, and the consistency of the agency's interpretation over time. Initially, agency interpretations of statutes were to be reviewed de novo. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124 (1944) (reasoning that "rulings, interpretations and opinions of the Administrator ... while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment....").

Lower courts have been told to give "some deference" to the interpretation of an agency, *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 454, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986) (observing that "[t]he legal issues presented ... are ... for the courts to resolve, although even in considering such issues the courts are to give some deference to the [agency's interpretation]"), and also to give "substantial deference" to an agency's construction of its own regulations. *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 111 S.Ct. 1171, 113 L.Ed.2d 117 (1991) (citations omitted). And the Court has instructed that lower courts are not to overturn an agency's interpretation of a statute if the agency's interpretation is "reasonable." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Finally, if an agency's interpretation conflicts with a prior interpretation by the agency, we have been told it receives "considerably less deference than a consistently held agency view." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (citations omitted). However, Congress and the Supreme Court have also instructed the courts not to follow an agency's interpretation if that interpretation violates the specific language of the statute or is otherwise contrary to law. *See* 5 U.S.C.

meaning, encompassing, as stated in the second part of § 3(f): 'any practices ... performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.'" *Id.; see Bayside,* 429 U.S. at 300 n. 7, 97 S.Ct. 576. *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. at 763, 69 S.Ct. 1274 (secondary farming embraces "any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations"). *Holly Farms,* 517 U.S. at 398, 116 S.Ct. 1396; *see also Farmers Reservoir & Irrigation Co.,* 337 U.S. at 763, 69 S.Ct. 1274 (first noting that "agriculture," as defined in the FLSA, "has two distinct branches," a "primary meaning" that "includes farming in all its branches," some of which were specifically listed in the statute, and a "[s]econd ... broader meaning" that embraced "things or other than farming as so illustrated" to "include[ ] any practices, whether or not themselves farming practices, which are performed either by a farmer or on a farm, incidently to or in conjunction with 'such' farming operations").

Thus, the Court's analysis in applying the exemption to particular facts has traditionally been bifurcated. First, the Court considered whether the employer was engaged in "primary" agriculture; second, only if the answer to the first question was "no," would the Court consider whether the employer was engaged in "secondary" agriculture. As to the "secondary" agriculture prong, the Court traditionally considers whether the employees in question were engaged in activity "performed by a farmer," and whether they were employed "on a farm" performing activities "as an incident to" or "conjoined with" a primary agriculture activity. *Id.* at 401–04, 116 S.Ct. 1396. (noting that "[t]he essential question" on this prong of the analysis "is whether the ... employees' activities are inevitably 'incident to or in conjunction with' the farming operations of the independent growers").

In *Holly Farms,* on the first prong of the analysis, the Court concluded that independent growers of broiler chickens under contract to Holly Farms were engaged in "primary" agriculture, but "live-haul" employees of Holly Farms, who caught chickens at the contract farms and delivered them to Holly Farms' processing plant, were not "themselves engaged in raising poultry." *Id.* at 400, 116 S.Ct. 1396. "Thus," the Court observed, "the only question we resolve is whether the chicken catchers, forklift operators, and truckdrivers (i.e., the "live haul crews") [the putative employees in this action] are engaged in secondary agriculture—that is, practices 'performed by a farmer or on a farm as an incident to or in conjunction with such farming operations.'" *Id.* (*quoting* 29 U.S.C. § 203(f)). On the "performed by a farmer" prong of the "secondary" agriculture analysis, the Court again revisited its prior decision in *Bayside Enterprises, Inc. v. NLRB,* 429 U.S. 298, 97 S.Ct. 576, 50 L.Ed.2d 494 (1977):

> [In Bayside, w]e upheld the Board's rejection of the contention that 'all of the activity on a contract farm should be regarded as agricultural activity of an integrated farmer' such as Holly Farms. When an integrated poultry producer contracts with independent growers for the care and feeding of [its] chicks, [its] status as a farmer engaged in raising poultry ends with respect to those chicks. Accordingly, when the live-haul employees arrive on the independent

§ 706(2)(A); *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (determining that reviewing courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") (quoting 5 U.S.C. § 706(2)(A)); *see*

*also Demarest v. Manspeaker,* 498 U.S. 184, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991) (stating that "administrative interpretation of a statute contrary to language as plain as we find here is not entitled to deference".)

It is, however, unnecessary for the court to reach this issue at this time.

farms to collect broilers for carriage to slaughter and processing, Holly Farms does not resume its status as farmer with respect to those birds, the status Holly Farms had weeks before, when the birds were hatched in its hatcheries. *Holly Farms,* 517 U.S. at 400, 116 S.Ct. 1396.

On the second prong of the "secondary" agriculture analysis, the Court found that the live-haul crews were not engaged in activity "on the farm" that was "incidental to or in conjunction with" farming operations, because those activities, while on the farm, were incidental to and in conjunction with Holly Farms' slaughtering and processing operations, and hence did not constitute "farming" under the statute. *Id.* at 401, 116 S.Ct. 1396. In so concluding, the Court found it "sensible" that the Board had "homed in on the status of the live-haul crews' employer" with respect to the particular activity at issue. *Id.* at 404, 116 S.Ct. 1396. Thus, employees engaged in activities surrounding Holly Farms' egg-hatching and pullet-raising operations were engaged in poultry-raising operations, that is, they were aligned with activities of their employer that constituted "primary" agriculture. *Id.* Hence, they were "agricultural laborers." *Id.* However, live-haul crews were aligned with slaughter and processing activities, that is, with activities of their employer when it was not engaged in "primary" agriculture. *Id.*

It is apparent from the foregoing and from the other cases that have analyzed the question of exemption under the FLSA that the *facts* surrounding the work performed by an employee are determinative of whether that employee is engaged "in agriculture" in either its primary or its secondary sense. *See, e.g., Coleman v. Sanderson Farms, Inc.,* 629 F.2d 1077, 1081 (5th Cir.1980) (live-haul drivers were within the secondary meaning of agriculture, performing work by a farmer as an incident to or in conjunction with their employer's primary farming task of raising

poultry); *Marshall v. Gulf & Western Indus., Inc.,* 552 F.2d 124, 126 (5th Cir.1977) (the fact that tomatoes grown by independent farmers were processed by the employer prevented it from receiving the "secondary agriculture" exemption); *Skipper v. Superior Dairies, Inc.,* 512 F.2d 409, 411–12 (5th Cir.1975) (employees who delivered and disposed of dairy products did not fit within the primary or secondary meaning of agriculture); *Brennan v. Sugar Cane Growers Co-op. of Fla.,* 486 F.2d 1006, 1011 (5th Cir.1973) (camp cooks for sugar cane workers fell within the secondary meaning of agriculture); *Hodgson v. Ewing,* 451 F.2d 526 (5th Cir.1971) (clerical work performed for a contractor primarily engaged in leveling agricultural land was not within the secondary meaning of agriculture, as most of that clerical work took place off the farm); *NLRB v. Hudson Farms, Inc.,* 681 F.2d 1105, 1106 (8th Cir.) (holding that employees who transported live poultry from an independent grower's farm to their employer's processing plant were not agricultural laborers); *Valmac Indus., Inc. v. NLRB,* 599 F.2d 246, 249 (8th Cir.1979) (concluding that employees who transported products away from the ·farm did not do work that was either "primary" or "secondary" farming).

### 2. The Complaint

In this case, the only facts alleged in the Complaint are that certain "live haul crews", whose work "includes the catching and transportation of chickens for processing and shipment . . . ." have not been paid overtime. *Complaint* at 2.[5] The Complaint only describes the workers' employment as "live-haul drivers, chicken catchers, and loader operators." *Complaint* at 3.

In order to decide the question of exemption, the court would be required to examine the specific nature of the work in question, and this would require resorting to facts not contained in the Complaint. For example, the Court cannot discern the relationship between the employees and the "status of the live-haul crews' employ-

---

**5.** Attached to the Complaint is a list that      identifies the employees at issue by name.

er with respect to the particular activity at issue" based upon the few facts alleged in the Complaint. *Holly Farms,* 517 U.S. at 404, 116 S.Ct. 1396. Accordingly, it is impossible to resolve the issue of exemption absent a showing by Continental of the facts which it contends establish that its employees are exempt from the mandatory overtime compensation and recording provisions of the FLSA.

In sum, the question of exemption turns on the application of law to facts and, thus, is not an appropriate subject to be raised on a Motion to Dismiss. This conclusion accords with those cases that have held that whether an employee is exempt under the Act involves substantial amounts of fact-finding before the court can resolve the ultimate legal question of exemption. *See, Walling v. General Industries Co.,* 330 U.S. 545, 550, 67 S.Ct. 883, 91 L.Ed. 1088 (1947); *see also, Martin v. Cooper Electric Supply Co.,* 940 F.2d 896, 900 (3d Cir.1991) ("the exemption is a mixed question of law and fact"); *Dalheim v. KDFW–TV,* 918 F.2d 1220 (5th Cir.1990) ("noting 'the inherent difficulty of distinguishing among questions of law,' fact, and law and fact ... [in this context, because] factual inferences are often indistinguishable from the legal standards...."); *Brennan v. Southern Productions, Inc.,* 513 F.2d 740 (6th Cir.1973) (whether employees are within an exemption is primarily a question of fact); *Pugh v. Lindsay,* 206 F.2d 43 (4th Cir.1953) (question of whether an employee is exempt under the Act is a question of fact to be resolved from an examination of all the evidence before the court); *Schumann v. Ross,* 199 F.2d 219 (7th Cir. 1952) ("question of whether an employee is exempt under the Act and Regulations is an ultimate question of fact to be determined in the first instance by the trial court.")

For these reasons, it is inappropriate for the court to determine at this stage in the litigation whether Continental's employees fall with the agricultural exemptions.[6]

The court will also address one final issue. The main argument raised by Continental on its Motion is whether this court should apply a decision of the former Fifth Circuit, which held that loader operators and live haul drivers employed by a vertically integrated poultry business fell within the agricultural exemption. *Coleman,* 629 F.2d at 1080.[7] In response, the Secretary points out that *Holly Farms,* which, as noted above, is a Supreme Court decision decided after *Coleman,* held that the chicken catchers, forklift operators, and live-haul drivers at issue in that case did not fit within the statutory exemption. Continental argues that *Coleman* was not overruled by *Holly Farms* for a variety of reasons. The Secretary maintains that *Coleman* has been overruled.

The arguments in the briefs on this Motion to Dismiss center on this issue to such a great extent that it almost seems that what Continental is really after in its Motion is a declaratory judgment that *Coleman* and not *Holly Farms* governs this action. The court, however, does not need to decide this issue at this stage in the litigation. Even assuming that *Coleman* controls, the court could not rule on the exemption in the absence of material facts necessary to make the determination whether these live-haul workers are exempt.[8] This follows from a close reading

---

6. This conclusion follows, *a fortiorori,* from the fact that the law places the burden of proving exemption on the employer claiming the exemption. *See Hodgson v. Colonnades, Inc.,* 472 F.2d 42 (5th Cir.1973). To dismiss this under the present circumstances would effectively switch the burden to the Secretary to prove that the employees were not exempt. After all, *Continental* is in a better position to know the nature of its business and the character of the work performed by its employees.

7. The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

8. Given the fact that *Holly Farms* apparently does overrule *Coleman,* Continental will inevitably be arguing uphill, so to speak, if it presses its assertion that this court ought not follow *Holly Farms. See Holly Farms,* 517 U.S. at 392, 116 S.Ct. 1396 ("Other Federal

of *Coleman*, which rested its decision on an understanding of "the character of the employer's activities" and all of the other factors that made the employees at issue in that case "agricultural." *Id.* at 1080. The *Coleman* court distinguished the earlier Supreme Court decision *Bayside*, which held that truck drivers engaged in transporting poultry feed from Bayside's feed mill to the independent contract farms where the chickens were being raised were not exempt employees, on the basis that the employees at issue in *Coleman* worked for a different type of employer and performed a different type of work *Id.* at 1081.

The distinction made by the *Coleman* panel was a factual one. The question of exemption in this cause will ultimately turn on similar grounds when sufficient facts are before the court. It may well turn out that the employees in this action work for a feedmill and perform work substantially similar to those employees at issue in *Bayside*[9] so that the factual distinctions that divided the exempt from the non-exempt under the FLSA in *Coleman* will require a finding that the employees at issue in this case are not exempt. In sum, it may turn out that the question of whether to follow *Holly Farms* or *Coleman* is moot.

### 3. Motion For A More Definite Statement

Continental has moved for a more definite statement under Rule 12(e) contending that the Complaint is deficient in particularity if it does not plead sufficient facts to allow the court to determine whether the exemption applies. The court does not agree. First, the law has placed the burden of proving that the exemption applies on the employer claiming the exemption. Thus a requirement that the Secretary plead sufficient facts in a judicial complaint under the FLSA to show that the employees were not exempt would ef-

fectively shift the burden on the issue of exemption from the employer to the Secretary.

Second, a motion for a more definite statement must be denied if the complaint attacked thereby, considered as a whole, fairly gives notice of the claim or claims asserted therein so as to permit the filing of a responsive answer. *See Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364 (11th Cir.1996). In this case, it cannot be said that the complaint is so vague or uncertain as to preclude the filing of a responsive pleading thereto. A motion for a more definite statement under Rule 12(e) is not to be employed as a substitute for pre-trial discovery proceedings. Accordingly, Continental's Motion for a More Definite Statement is due to be DENIED.

### V. CONCLUSION

Whether the employees are exempt from the FLSA overtime compensation provisions depends ultimately upon consideration of facts yet to be proved. The Secretary has adequately alleged a violation of the FLSA and those allegations are sufficiently well-pleaded in the Complaint to put Continental on notice of the claims alleged therein.

For these reasons, it is ORDERED as follows:

(1) The Motion to Dismiss filed by the Defendant, Continental Grain Company, is hereby DENIED.

(2) The Motion for a Temporary Stay filed by the Defendant, Continental Grain Company, is hereby DENIED.

(3) The Motion for a More Definite Statement is hereby DENIED.

---

Courts of Appeal ... have held that live-haul workers employed by vertically integrated poultry producers are engaged in 'agriculture.' *See, e.g., Coleman* .... *We granted certiorari to resolve the division of authority*").

9. This is particularly true when one considers the Defendant's name: Continental Grain Company.

The Defendant is given until **January 28, 2000** to file an Answer to the Complaint.